**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **STREAMLINE BUSINESS SERVICES, LLC**<br>**v.**<br>**VIDIBLE, INC., et al.** | **CIVIL ACTION**<br><br>**NO.  14-1433** |

**Baylson, J.**                                                                                    **August 26, 2014**

## MEMORANDUM RE MOTIONS TO DISMISS

Plaintiff, Streamline Business Group, brings claims against a former business partner, Vidible, Inc., two of Vidible's principals (collectively, the "Vidible Defendants"), and two venture capital firms that invested in Vidible, alleging breach of contract, unjust enrichment, and tortious interference. All Defendants have moved to dismiss for lack of personal jurisdiction. The Vidible Defendants have also moved to dismiss for failure to state a claim and improper venue. Since personal jurisdiction is a threshold issue, this Memorandum will first address that question.

### I.     FACTUAL BACKGROUND & PROCEDURAL HISTORY

Vidible, Inc. is a Delaware corporation with its principal place of business in Washington, which created an exchange market place for distributors and publishers to buy and sell videos for online advertising.  Streamline Business Group (Plaintiff) is a Pennsylvania company that entered into an oral contract with Vidible in 2012 to procure customers for Vidible. Michael Hyman (Hyman), a Washington resident, and Timothy Mahlman (Mahlman), a California resident (together the "Individual Defendants"), are principals of Vidible who engaged in all of the communications Plaintiff alleges.   Greycroft Partners LP (Greycroft) is a Delaware venture capital firm with its principal place of business in New York.  Defendant IDG Ventures USA (IDG) is a Delaware venture capital firm with its principal place of business in California (collectively the "Investors").

**A. Plaintiff's Allegations**

Plaintiff alleges the following facts.  In 2012, Plaintiff and Vidible entered into an oral agreement[1] to share the fees from the customers Plaintiff recruited for Vidible's business for a five-year term.  Amend. Compl. at ¶16. In 2012 Plaintiff successfully recruited customers DHI, based in New York, and Matomy, based in Israel.  Amend. Compl. at ¶20. Vidible paid Plaintiff its share of the customer's fees to its bank in Pennsylvania. Amend. Compl. at ¶28. In late 2013 Greycroft and IDG made a capital investment in Vidible. Amend. Compl. at ¶32.

On January 3, 2014 a principal of Plaintiff, James Battista, met with Mahlman on behalf of Vidible in California. Amend. Compl. at ¶¶32-33. At this meeting Mahlman asked Battista if Plaintiff would reduce its share of fees from the Matomy client account because Vidible was spending significant sums providing customer support.  Amend. Compl. at ¶33.

The First Amended Complaint alleges that Greycroft and IDG were both engaged in management of Vidible by sitting on Vidible's board, and through this influence "exerted pressure on Vidible" to renegotiate its agreement with Plaintiff.  Amend. Compl. at ¶¶34-37. Vidible sought to limit the contract to two years in duration, reduce the fee percentage, and cap total monthly fees per customer. Amend. Compl. at ¶38. Plaintiff rejected this offer, and demanded payments for its share of the customer fees that were overdue.  Amend. Compl. at ¶¶38-39.  Then Vidible went directly to the customers Matomy and DHI to negotiate a new agreement that excluded Plaintiff.  Amend. Compl. at ¶40.

Plaintiff alleges Mahlman and Hyman falsely accused Plaintiff of illegal or improper activities to interfere with its relationship with DHI, Matomy, and others.  Amend. Compl. at ¶41.  Plaintiff alleges the Individual Defendants flew to New York and Israel to interfere with these business relationships.  Amend. Compl. at ¶¶42-23.  Plaintiff further alleges Hyman and Mahlman urged Plaintiff's consultant, Paranone, to breach its contract with Plaintiff and instead

---

[1] Vidible submitted copies of draft agreements that were never executed.  One of these drafts contains a choice of law provision selecting New York law.  (ECF 19).

work directly for Vidible.  Amend. Compl. at ¶¶42-44.  Finally, Plaintiff alleges Vidible failed to

pay its share of customer fees in the amount of $5,000,000.  Amend. Compl. at ¶56.

In its First Amended Complaint, Plaintiff brings claims against Vidible for breach of

contract and unjust enrichment. (ECF 12)  Plaintiff also claims tortious interference against

Greycroft, IDG, Vidible, and two of Vidible's principals, defendants Mahlman and Hyman.

**B. Submitted Affidavits and Appended Documents**

Investors submitted affidavits disavowing any significant contacts with Pennsylvania.

(ECF 15-2)  Plaintiff responded with an affidavit of James Battista, and attached copies of

various webpages showing that Investors had invested in companies that operated in

Pennsylvania.  (ECF 16-3)  Plaintiff also produced evidence that IDG is "one facet of the

corporate behemoth, International Data Group, whose major publications include GamePro,

Macworld, and PCWorld, which have a global circulation undoubtedly inclusive of Pennsylvania

consumers."  (ECF 16-3 at ¶7)  Finally, Plaintiff submitted webpages from International Data

Group and Greycroft that state both companies have a "global" reach.  (ECF 16-3)

Vidible Defendants submitted an affidavit by Vidible principal Michael Hyman, attesting

to their lack of contacts with Pennsylvania.  (ECF 19)  Hyman attested that Vidible does not sell

any goods or services to consumers in Pennsylvania, has never solicited business in

Pennsylvania, and that it was Plaintiff who reached out to Vidible.  (ECF 19 at ¶¶12-14)  Hyman

further attested that the initial meeting between Plaintiff and Vidible took place in New York,

and all subsequent in-person meetings took place outside of Pennsylvania.  (ECF 19 at

¶¶15&22)  Hyman did admit that "[s]ometimes the parties spoke over the phone or on Skype."

(ECF 19 at ¶22)

In response, Plaintiff submitted a second declaration of James Battista attesting to

Plaintiff's communications with Vidible. (ECF 20)  Battista attested that each week he received

approximately five emails Mahlman and another five emails from Hyman regarding contract

negotiations and the business relationship between Vidible and SBG. (ECF 20 at ¶¶4-5).  Battista also received approximately one weekly Skype communication and five weekly telephone communications regarding the business relationship from Malhman and another one and five, respectively, from Hyman each week while in Pennsylvania. (ECF 20 at ¶¶8-9).  Battista attested that Plaintiff received at least ten payments from Vidible in a bank account opened and maintained in Pennsylvania.  (ECF 20 at ¶¶10-11).  Finally, Battista attested that Plaintiff operates in Pennsylvania where it performed the majority of the negotiation, consultation and advice for the services Vidible contracted.  (ECF 20 at ¶¶15-16).

In a third declaration appended to Plaintiff's surreply, Battista attested that the negotiations over the Vidible contract occurred via Skype and email sent to him while he was in Pennsylvania.  (ECF 23 at ¶8).  Plaintiff submitted copies of 119 email communications, one of which mentioned the use of Skype to discuss the contract. (ECF 23 at ¶¶5-7). Battista also attached an email "dated March 28, 2013 from Mr. Mahlman wherein he confirms our call to finalize our partnership terms via telephone while I was in Pennsylvania."  (ECF 23 at ¶10).

## C. Subsequent Procedural History

Greycroft and IDG (Investors) filed a motion to dismiss based on lack of personal jurisdiction, and failure to state a claim for tortious interference. (ECF No. 15). Vidible, Mahlman, and Hyman (Vidible Defendants) also filed a motion to dismiss based on lack of personal jurisdiction, improper venue, and failure to state claims for breach of contract, unjust enrichment, and tortious interference. (ECF No. 19). These motions are presently before this Court.

## II.   THE PARTIES' ARGUMENTS

Plaintiff contends that this Court has general jurisdiction over Investors because Greycroft and IDG solicit business in Pennsylvania through their Internet websites and have invested in Pennsylvania-based companies.  Investors respond that their passive websites do not

give rise to general jurisdiction, and that Plaintiff has not produced any evidence showing they exert direction or control of the affiliated entities' contacts with Pennsylvania. Plaintiff does not assert this Court has general personal jurisdiction over the Vidible Defendants.

Plaintiff asserts specific personal jurisdiction over Investors because they presumably reviewed all of Vidible's financials before investing in the company, and must have reviewed invoices showing Plaintiff is located in Pennsylvania. Consequently, Investors had knowledge their conduct would result in harm in Pennsylvania. Investors respond that there is no evidence showing that they had knowledge Vidible operated in Pennsylvania.

Plaintiff claims Vidible, Mahlman, and Hyman are subject to specific personal jurisdiction in this Court because they intentionally entered into an ongoing business venture with Plaintiff, and were aware that Plaintiff would conduct all of its business for Vidible in this district. Vidible Defendants respond that merely entering into a contract with a Pennsylvania resident does not subject them to personal jurisdiction here.

Finally, the Vidible Defendants moved to dismiss for improper venue because none of the defendants reside in this District, none of the events giving rise to the claims occurred here, and venue does properly lie in the Southern District of New York where the events giving rise to the claim did occur. Plaintiff responds that a substantial part of the conduct giving rise to its claims did occur in Pennsylvania because that is where the contracts were formed, where the contracts were to be performed, and where the brunt of the harm was felt. Plaintiff disputes that venue is proper in the Southern District of New York, because only one of the defendants resides there. Further, the parties, relevant witnesses, and documents "are equally scattered," so Plaintiff's choice of forum should not be disturbed.

The Vidible Defendants reply that New York is appropriate because the draft contract's choice of law provision selects New York law.[2]  Plaintiff has requested leave to file a surreply brief which will be **GRANTED** and discussed below.

### III.   STANDARD

 "To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff bears the burden of establishing the court's jurisdiction over the moving defendants." Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93 (3d Cir. 2004) (citing Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 368 (3d Cir. 2002)). "Although the plaintiff bears the burden of demonstrating the facts that establish personal jurisdiction, see Mellon Bank (East) PSFS Nat'l Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992), in reviewing a motion to dismiss under Rule 12(b)(2), we 'must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff.'" Pinker v. Roche Holdings Ltd., 292 F.3d 361, 368 (3d Cir. 2002) (quoting Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 142 n.1 (3d Cir. 1992)).

Once a jurisdictional defense is raised, the plaintiff bears the burden of proving, through affidavits, or competent evidence, sufficient contacts with the forum state to establish personal jurisdiction. Dayhoff Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1302 (3d Cir. 1996), *cert. denied,* 519 U.S. 1028 (1996).  The plaintiff must establish those contacts with reasonable particularity; he may not rely on general averments in the bare pleadings. Farino, 960 F.2d at 1223.  "Where the plaintiff has made this required threshold showing, courts within this Circuit have sustained the right to conduct discovery before the district court dismisses for lack of personal jurisdiction." Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 456 (3d Cir. 2003).

"However, when the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor."  Miller

---

[2] Vidible submitted copies of draft agreements that were never executed.  One of these drafts contains a choice of law provision selecting New York law.  (ECF 19).

Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004); see also O'Conner, 496 F.3d at 316

("Nonetheless, since the District Court did not hold an evidentiary hearing . . ., the plaintiffs need

only establish a prima facie case of personal jurisdiction and the plaintiffs are entitled to have

their allegations taken as true and all factual disputes drawn in their favor." (internal quotations

and alterations omitted)).

### IV.   ANALYSIS

Pennsylvania's long arm statute authorizes courts to exercise personal jurisdiction "to the

fullest extent allowed under the Constitution of the United States . . . ." 42 PA. CONS. STAT.

§ 5322(b). The Due Process Clause requires that the nonresident defendant have "minimum

contacts" with the forum state, and that the exercise of jurisdiction comport with "traditional

notions of fair play and substantial justice." Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir.

2001) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).  The plaintiff must

show that the defendant has "purposefully directed its activities toward the residents" of

Pennsylvania or otherwise "purposefully availed itself of the privilege of conducting activities

within [Pennsylvania], thus invoking the benefits and protections of its laws." Id. (internal

citations omitted).

These due process principles give rise to two recognized types of personal jurisdiction:

specific jurisdiction and general jurisdiction. Marten, 499 F.3d at 296. General jurisdiction

depends on whether the defendant has maintained "continuous and systematic" contacts with the

forum, and exists even if the cause of action is unrelated to the defendant's activities in the forum

state. Remick, 238 F.3d at 255 (citing Helicopteros, 466 U.S. at 416). Conversely, specific

jurisdiction is appropriate only if the cause of action arises out of a defendant's forum-related

activities, such that the defendant "should reasonably expect being haled into court" in that

forum. Vetrotex, 75 F.3d at 151 (quoting Worldwide Volkswagen Corp. v. Woodson, 444 U.S.

286, 297 (1980)).

**A. General Jurisdiction**

A court's exercise of general jurisdiction, in compliance with due process, "depends on a defendant having maintained 'continuous and systematic' contacts with the forum state." D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd., 566 F.3d 94, 108 (3d Cir. 2009).

The Third Circuit requires the plaintiff to show "significantly more than mere minimum contacts" to establish general jurisdiction; the nonresident defendant's contacts with the forum must be continuous and substantial. Reliance Steel Prod. Co. v. Watson, Ess, Marshall & Engass, 675 F.2d 587, 589 (3d Cir. 1987) (finding only contacts that are "extensive and persuasive" suffice). In short, this higher threshold for general personal jurisdiction demands that the defendant have contacts with the forum that would approximate physical presence in the forum. Nationwide Contractor Audit Serv., Inc. v. Nat'l Compliance Mgmt. Serv., Inc., 622 F.Supp.2d 276, 284 (W.D. Pa. 2008).

Whether a defendant's business in Pennsylvania is continuous and systematic depends on the quality and nature of the defendant's contacts over a reasonable amount of time. See Manning, 2010 WL 55295, at *6 (E.D. Pa. Jan. 6, 2010); TruePosition, 844 F.Supp. 2d at 585-87 ("[A] court should look to the defendant's 'purposeful and extensive availment' of the forum, and consider the degree to which a corporation's contacts with a given forum are 'central to the conduct of its business.'" (quoting Molnlycke, 64 F.Supp.2d at 450)). Factors include the place of incorporation, maintenance of an office or agent in the forum state, and ongoing business relationships with residents of the forum jurisdiction.  Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 335 (3d Cir. 2009). Courts consider:

> [1] whether the defendant conducts 'daily business' with Pennsylvania companies…[2] what percentage of defendant's total business was generated in Pennsylvania… [3] whether defendant maintained offices or paid taxes in Pennsylvania…[4] whether defendant availed itself of Pennsylvania resources in an extensive manner as a way of furthering its business…[5] whether defendant made significant direct sales in Pennsylvania, solicited business regularly in Pennsylvania, and advertised in a manner *specifically targeted* to reach the Pennsylvania market.

Henning v. Suarez Corp, 713 F.Supp. 2d 459, 465 (E.D. Pa. 2010) (emphasis and punctuation in original).

**1. Internet Contacts**

In Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F.Supp. 1119, 1124 (W.D. Pa. 1997), the court developed a sliding scale test for analyzing a defendant's Internet contacts for specific jurisdiction, which the Third Circuit adopted in Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 452 (3d Cir. 2003).

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper ... At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive website that does little more than make information available to those who are interested in it is not grounds for the exercise of personal jurisdiction

Zippo, 952 F.Supp. at 1124 (finding jurisdiction because of the knowing and repeated entering into contracts with Pennsylvania residents, through its website, and the consistent transmission of files to Pennsylvania).

"Although the court in Zippo suggests that use of a website 'where a defendant clearly does business over the Internet,' will confer personal jurisdiction, it is important to note that Zippo was a specific jurisdiction case and that advancements in technology have affected courts' application of the 'sliding scale.'" Henning, 713 F. Supp. 2d at 469.  For example, Judge Surrick of this Court found that merely allowing customers in Pennsylvania to purchase items through a website was insufficient for general personal jurisdiction because of the small number of Pennsylvania sales, and the fact that those sales did not constitute a central part of the defendant's business. Brown v. AST Sports Sci., Inc., No. 02-1682, 2002 WL 32345935, at *9 (E.D. Pa. June 28, 2002) ("Allowing the mere presence of a website along with a toll-free number accessible from a particular state to constitute general personal jurisdiction in that state

would result in an end-run around the Constitution."). Accordingly, "the mere operation of a commercially interactive web site should not subject the operator to jurisdiction anywhere in the world." Toys "R" Us, 318 F.3d at 454 ("Rather, there must be evidence that the defendant 'purposefully availed' itself of conducting activity in the forum state, by directly targeting its website to the state, knowingly interacting with residents of the forum state via its web site, or through sufficient other related contacts.").

Plaintiff contends the Investors' websites support general personal jurisdiction because the websites are accessible to residents of this forum. (ECF 16 at 5-6). But Plaintiff has not presented any evidence or argument that the website are "active" under the standards articulated in Zippo and Toys "R" Us. There is no evidence that either of the Investors engage in significant commerce or otherwise intentionally target consumers in Pennsylvania through their websites. Cf. Brown, 2002 WL32345935,  at *9 (finding a small number of internet purchases was not the kind of continuous and systemic contacts required to support general personal jurisdiction).

Finally, Plaintiff contends that statements on Investors' websites that they conduct business all over the world supports this Court's jurisdiction over them.[3]  However, the Third Circuit has clearly held that a company's statements on its website that it is a worldwide service provider do not show the kind of continuous or systematic activity required to exercise general personal jurisdiction. Kehm Oil Co. v. Texaco, Inc., 537 F.3d 290, 300 (3d Cir. 2008) (affirming the district court's determination it did not have personal jurisdiction over Chevron, but vacating

---

[3] [Greycroft's] mandate is to invest in products and services that are delivered over the Internet or wireless networks, which means that [it] consider[s] a wide variety of good ideas that are digital media-related…[Greycroft] ha[s] the ability to pursue business across the globe, although [it] spend[s] most of [its] time in New York and Los Angeles.

....

IDG informs more people about information technology than any other company in the world. IDG is the leading multibillion dollar provider of IT media, research conferences and events. IDG publishes more than 300 newspaper and magazines in 85 countries, led by Computerworld, InfoWorld, Macworld, Network World, and CIO global product lines. Through IDG.net, IDG offers online users more than 330 web sites in 70 countries. IDG also produces hundreds of computer-related conferences and trade shows in 35 countries, and its research arm, International Data Corporation, provides computer industry research and analysis through 51 offices in 43 countries worldwide.

Dec. Counsel Ex. B. ¶ 2.

and remanding on the question of preemption). Plaintiff has not made a prima facie showing that either IDG or Greycroft have continuous or systemic contacts with Pennsylvania.

## 2. Parent and Investment Corporations

"[A] foreign corporation is not subject to the jurisdiction of the forum state merely because of its ownership of the shares of stock of a subsidiary doing business in that state." Lucas v. Gulf & Western Indus., Inc., 666 F.2d 800, 805-06 (3d Cir. 1981). The Supreme Court recently held "that a subsidiary's jurisdictional contacts can be imputed to its parent only when the former is so dominated by the latter as to be its alter ego." Daimler AG v. Bauman, 571 U.S. at __, 134 S. Ct. 746, 759, 187 L. Ed. 2d 624 (2014). The Third Circuit has held "the plaintiff must establish at least one of the following three requirements: showing the independence of two entities has been disregarded, that the parent exercises such total control over subsidiary that both companies should be considered one company, or that the subsidiary performs important functions that parent would otherwise have to perform itself." Brooks v. Bacardi Rum Corp., 943 F.Supp. 559, 562-563 (E.D. Pa. 1996).

### a. Greycroft

Plaintiff contends that Greycroft is subject to general jurisdiction because it has invested in two companies located in Pennsylvania and that it is a member of recruiting agency, which is located and targets its business in Pennsylvania. (ECF 16). But Plaintiff has not provided any evidence or allegations that Greycroft exercises any ownership or control in over these Pennsylvania entities. Greycroft is a venture capital corporation that invests in mobile and Internet application startups. The company engages in investments throughout the country, but only maintains offices in California and New York. Nothing in Plaintiff's First Amended Complaint or briefing offers any evidence of substantial control or continuous contacts through the affiliated and investment entities that would render Greycroft at home in Pennsylvania.

**b. IDG**

Plaintiff similarly claims that IDG's parent or affiliated entities provide grounds for asserting general personal jurisdiction. Plaintiff has neither provided any evidence of the relationship of these entities to IDG, nor given the names of the affiliated entities located in the district. Plaintiff produced evidence that IDG's affiliated company, International Data Group, publishes international newspapers and magazines, including Computerworld, InfoWorld, Macworld, and Network World. (ECF 16-3). But International Data Group is not the same corporate entity as the Defendant IDG. No evidence or argument has been provided that shows a principal-agency relationship between IDG and International Data Group or any other unnamed "affiliated" entities.

### 3. Vidible Defendants

Plaintiff admits "it is unclear to SBG whether Vidible and Hyman have significant contacts with Pennsylvania in terms broader than this litigation" and request discovery on the issue. (ECF 20 at 4 n.1). Plaintiff further contends Malhman waived his objection to the exercise of general jurisdiction because he did not file an affidavit referred to in the Vidible Defendants' motion to dismiss. But Malhman did raise this objection in his motion to dismiss, so it is not waived. (ECF 19).

## B. Specific Jurisdiction

Specific jurisdiction, unlike general jurisdiction, exists when the defendant's conduct giving rise to the cause of action "create[s] a substantial connection with the forum State." Walden v. Fiore, 571 U.S. __, 6, 134 S. Ct. 1115, 188 L. Ed. 2d 12 (Feb. 25, 2014). Contacts must be with the forum state and "the plaintiff cannot be the only link between the defendant and the forum. . . . it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for jurisdiction over him." Id. at 7-8 ("To be sure, a defendant's

12

contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties.") (internal citations omitted).

The Third Circuit undertakes a three-part analysis to determine whether specific jurisdiction exists. O'Connor, 496 F.3d at 317; Mendelsohn, Drucker & Associates v. Titan Atlas Mfg., Inc., 885 F. Supp. 2d 767, 774 (E.D. Pa. 2012) (Baylson, J.).  First, the defendant must have purposefully directed its activities at the forum state. D'Jamoos, 566 F.3d at 102 (citing Burger King, 471 U.S. at 472). Second, the claim must arise out of or relate to those activities. Marten, 499 F.3d at 296 (citing Helicopteros, 466 U.S. at 414). Third, if the first two requirements are satisfied, courts then consider whether the exercise of jurisdiction would comport with tradition notions of fair play and substantial justice. O'Connor, 496 F.3d at 317. Physical entrance into the forum is not required to satisfy the test, but the defendant's contacts with the forum must be more than "fortuitous or the result of a single transaction." Manning, 2010 WL 55295, at *9 (internal citations omitted).

 This Court must consider each defendant's contacts with regards to each cause of action to determine whether this Court can exercise specific jurisdiction over that defendant in that claim.  Remick, 238 F.3d at 255-256.

**1. Contract Claims against Vidible**

In contract cases, federal courts may exercise specific jurisdiction if the defendant's contacts with the forum were instrumental in either formation of the contract or its breach. Mendelsohn, 885 F. Supp. 2d at 773 (citing Deutz, 270 F.3d 144, 150 (3d Cir. 2001)). "By creating 'continuing obligations between [themselves] and residents of the forum,' parties may purposefully avail themselves of the forum state." Id. (quoting Burger King, 471 U.S. at 476).

"The mere existence of a contract, . . .  'is insufficient to establish minimum contacts.'" Id. at 773 (quoting Metcalfe, 566 F.3d at 333 n.7); Burger King, 471 U.S. at 479.  "The requisite contacts, however, may be supplied by the terms of the agreement, the place and character of

prior negotiations, contemplated future consequences, or the course of dealings between the parties." <u>Farino</u>, 960 F.2d at 1223. Physical presence in the forum state is not required. <u>Deutz</u>, 270 F.3d at 150-51 (holding "communication by electronic facilities, rather than physical presence" can establish these relationships); <u>Mendelsohn</u>, 885 F.Supp.2d at 773-774 ("[I]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines thus obviating the need for physical presence within a State in which business is conducted." (internal citations and quotations omitted)).

In <u>Remick</u> the Third Circuit held there were sufficient contacts to support specific personal jurisdiction over the defendant in a breach of contract claim where the defendant sought out the plaintiff by calling his office in Philadelphia, the defendant returned the signed agreement to the plaintiff in Philadelphia, and the defendant submitted least one payment to Philadelphia. <u>Remick</u>, 238 F.3d at 256 (noting further that the contract explicitly stated "that its formality was required by the Pennsylvania Rules of Professional Conduct, suggesting that Manfredy was receiving the benefit of Pennsylvania law under the agreement."). In addition, "[m]ost of the services performed by Remick on behalf of Manfredy were conducted at Remick's Philadelphia office, and Manfredy certainly should have expected as much as he knew that Remick's home office is in Philadelphia." <u>Id.</u>

The court held that unlike the "informational communications" that were insufficient to establish personal jurisdiction in <u>Vetrotex Certainteed Corp. v. Consol. Fiber Glass Products Co.</u>, 75 F.3d 147 (3d Cir. 1996), when taken together, the mailings and telephone conversations, signing contract, and at least one payment sent in the forum state established jurisdiction over the defendant. <u>Remick</u>, 238 F.2d at 256. The court in <u>Remick</u> concluded the case was more akin to <u>Farino</u> where the Third Circuit held the "defendants . . . purposefully availed themselves of the

14

privilege of conducting business in the Commonwealth [because they] were all well aware, or should have been, that they were dealing with a Pennsylvania bank." 960 F.2d at 1223.

In Farino the defendants all signed agreements noting the bank was located in Pennsylvania and corresponded with the bank in Pennsylvania. Id. ("They clearly had the option to seek financing with a bank or banks in any number of other states. Yet, the defendants chose Mellon in Pennsylvania."); see also Mendelsohn, 885 F.Supp.2d at 780 (finding sufficient contacts to exercise specific personal jurisdiction in a breach of contract claim based on the exchange of 531 emails, 38 phone calls, and partial payment sent to Philadelphia office, even though the nonresident defendant's employees never visited the forum state).

Here, the contract negotiations took place over email and Skype, during which Plaintiff's chairman, James Battista, was located in Pennsylvania. (ECF 23 at ¶¶ 7-11, 16-17). Both parties maintained constant and consistent communication via Skype, email and telephone communications during prior negotiations and in performance of the contract. (ECF 20 at ¶¶ 3-9; ECF 23 at ¶ 4). In these communications—including 119 emails Plaintiff produced—the parties negotiated the contract, scheduled meetings, and discussed billing and client matters. (ECF 20 at ¶¶ 12-13, ECF 23 at ¶ 4).

Vidible also made payments into Plaintiff's Pennsylvania bank account for services rendered under the oral contract. (ECF 20 at ¶¶ 10-11). Even though Vidible, or its principals, never physically entered Pennsylvania, they were aware that Plaintiff was a resident of Pennsylvania during contractual negotiations, and that Plaintiff would conduct its services at its office in Pennsylvania. (ECF 20 at ¶¶ 3-9, 15, 11; ECF 19). In addition, Vidible contemplated future dealings and contacts with Pennsylvania when it entered into a five-year oral contract with Plaintiff. (ECF 20 at ¶ 28). Vidible does not contest these statements and only asserts that, when taken alone, they do not amount of sufficient contacts with Pennsylvania. (ECF 22 at 6-8).

Vidible contends that jurisdiction is inappropriate in this forum because Plaintiff's solicitation of the contract precludes Vidible and its principals from being subject to Pennsylvania jurisdiction. However, this Circuit has established that it is not significant that one or the other party initiated the relationship. Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 150 (3d Cir. 1992). Rather, in the commercial context, it is the intention to establish a common venture extending over a substantial period of time that is a more important consideration. Deutz, 270 F.3d at 151. Plaintiff has produced sufficient evidence to show this Court can exercise specific personal jurisdiction over Vidible in its breach of contract in unjust enrichment claims.

**2. Tortious interference claims**

Pennsylvania's long-arm statute extends jurisdiction over anyone who, "causes harm or tortious injury in the Commonwealth by an act or omission outside the Commonwealth." 42 PA. CONS. STAT. § 5322(a)(4). The Third Circuit has applied a three-part test to determine specific personal jurisdiction in an intentional business interference claim:

> (1) the defendant must have committed an intentional tort; (2) the plaintiff must have felt the brunt of the harm caused by that tort in the forum, such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of the tort; (3) defendant must have expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity.

IMO, 155 F.3d at 256 (3d Cir. 1998) (citing Calder v. Jones, 465 U.S. 783 (1984)).

The Supreme Court recently explained that "a forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum." Walden, 134 S. Ct. 1115, 1124. In Walden v. Fiore, the Court reversed the Ninth Circuit's ruling that a defendant was subject to jurisdiction in Nevada based on his knowledge that the plaintiffs intended the use the funds in Nevada. Id. at 1121 (noting the Nevada long-arm statute authorized the exercise of personal jurisdiction to the fullest extent permitted by the Constitution). The plaintiffs attempted to establish jurisdiction in Nevada over a Georgia police officer who seized funds from them in an Atlanta airport based on

16

the resultant harm they suffered in Nevada. Id. at 1119-20. The Court held that the defendant could not be subject to jurisdiction in Nevada because the conduct occurred entirely in Georgia, and "the mere fact that his conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction." Id. at 1126.

The Court reasoned that first, due process requires that a defendant has sufficient contacts with the forum. Id. at 1122. ("[T]he plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him."). "Second, our 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." Id. The Court reiterated that it is "insufficient to rely on a defendant's 'random, fortuitous, or attenuated contacts' or on the 'unilateral activity' of a plaintiff." Id. at 123 (quoting Burger King, 471 U.S. at 475). Thus, merely because the defendant knew the plaintiffs were headed to Nevada, "it is not the sort of effect that is tethered to Nevada in any meaningful way. Respondents (and only respondents) lacked access to their funds in Nevada not because anything independently occurred there, but because Nevada is where respondents chose to be at a time when they desired to use the funds seized by petitioner." Id. at 1125 ("Respondents would have experienced this same lack of access in California, Mississippi, or wherever else they might have traveled and found themselves wanting more money than they had.").

The Court distinguished Calder, where the harm was the communication of the alleged libel in the forum state. Id. at 1123-24 ("The crux of Calder was that the reputation-based 'effects' of the alleged libel connected the defendants to California, not just to the plaintiff."). "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." Id. at 1125.

17

It appears that this ruling could limit the <u>Calder</u> effects test.  But this Court need not reach this sweeping question, since Plaintiff has not pointed to any evidence or facts showing the Investor Defendants even had knowledge that Plaintiff resided in Pennsylvania. Without such knowledge, this Court cannot find that the Investor Defendants engaged in intentional conduct in this forum.

Vidible, on the other hand, had extensive contacts with Plaintiff in Pennsylvania.  In applying the effects test, Plaintiff adequately alleges Vidible committed an intentional tort. Second, through the course of their extended business relationship, Vidible was aware that Plaintiff conducted business in Pennsylvania, held bank accounts in Pennsylvania, and that is where Plaintiff would suffer the brunt of the harm.  (ECF 20).  Third, the tort is related to the contract between Vidible and Plaintiff.  Although the claim is based on interference with Plaintiff's contracts with third parties, the Third Circuit in <u>Remick</u> held that the defendant's contractual relationship with the plaintiff supported jurisdiction over the plaintiff's claim for tortious interference.  <u>Remick</u>, 238 F.3d at 260 ("Albeit a tort, it is necessarily related to the contract which he had entered into with Manfredy and which is the subject of the alleged tortious interference.").  Similar to the facts alleged in this case, the plaintiff in <u>Remick</u> alleged the defendant "disseminated false and defamatory information about Remick's skill and ability with the intent to interfere and cause harm to Remick's contract with Manfredy."  <u>Id.</u> (internal quotations and alterations omitted); Amend. Compl. at ¶¶40-41 (alleging Vidible "attempted to end-run the contract by approaching both Matomy and DHI" to contract directly with them, and through its agents Mahlman and Hyman "began a smear campaign" falsely accusing Plaintiff "of participating in illegal and/or other improper activities.").  This is unlike the "random, fortuitous" contacts in <u>Walden</u>.  Rather, Vidible intentionally reached into Pennsylvania to engage in business with Plaintiffs, and then allegedly sought to harm Plaintiff's business in Pennsylvania when it wanted to renegotiate that contract.

## C. Malhman and Hyman

"As a general rule, individuals performing acts in a state in their corporate capacity are not subject to the personal jurisdiction of the courts of that state for those acts." D & S Screen Fund II v. Ferrari, 174 F. Supp. 2d 343, 347 (E.D. Pa. 2001); Direct Response Media v. Fall Line Entm't, Inc., No. 99-2645, 1999 WL 962542, at *4 (E.D. Pa. Oct. 20, 1999). However, under the participation theory, a "corporate agent may be held personally liable for torts committed in their corporate capacity." Mendelsohn, 885 F. Supp. 2d at 783-85 (internal citations omitted). Under this exception, personal jurisdiction exists in such circumstances so the corporate defendant will "not be able to use the corporate shield to protect himself from suit in the forum." Id.

In order to determine whether a corporate officer will be subject to personal jurisdiction, courts consider the officer's role in the corporate structure, the quality of the officer's contacts, and the extent and nature of the officer's participation in the alleged tortious conduct. Id. at 784 (internal citations omitted). An officer's position in the defendant corporation may satisfy the test when the officer was a "key player in the corporate structure." Rittenhouse & Lee v. Dollars & Sense, Inc., No. 83-cv-5996, 1987 WL 9665 at *5 (E.D. Pa. Apr. 15, 1987), and possessed the "apparent authority to commit the corporation to contracts and to represent the corporation in contractual discussions and obligations." Id. (citing Elbeco Inc. v. Estrella de Plato, Corp., 989 F.Supp. 669, 676-677 (E.D. Pa. 1997)).

In Remick, the Third Circuit held individual corporate officers were subject to specific personal jurisdiction for their roles in negotiating, making payments on, and communicating about the subject contract. Remick, 238 F.3d at 256. As discussed above, these same contacts supported specific personal jurisdiction over claims for tortious interference. Id. at 260. The plaintiff in Remick alleged the same individual corporate officers made false and defamatory statements with the intention of interfering with the plaintiff's contractual relationships. Id.

19

Here the individual defendants Mahlman and Hyman are both principals of Vidible. (ECF 19). Both individuals hold the title of a corporate officer and have actual authority to enter into contracts on behalf of Vidible. (ECF 19). Inferentially, from the documents attached to Plaintiff's surreply brief, both Hyman and Malhman were fully aware of Plaintiff's location, and engaged in contract negotiations and substantial communications with Plaintiff while in Plaintiff was in Pennsylvania. (ECF 23). Each took an active role with Plaintiff's performance under the contract in Pennsylvania. (ECF 20&23). Finally, Plaintiff adequately alleges that Hyman and Malhman tortuously interfered with existing contracts with DHI, Matomy, and Plaintiff's consultant by disseminating false accusations of misconduct. Amend. Compl. ¶¶ 40-44.

**D. Venue**

In federal diversity suits, venue is proper in any district where:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located
(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). The moving party bears the burden of proving improper venue. Myers v. Am. Dental Ass'n, 695 F.2d 716, 724–25 (3d Cir. 1982).

The parties dispute whether a substantial portion of the conduct giving rise to the contract and tortious interference claims arose in Pennsylvania to support venue under § 1391(b)(2). "Events or omissions that might only have some tangential connection with the dispute in litigation are not enough." Cottman Transmission Sys., Inc. v. Martino, 36 F.3d 291, 294 (3d Cir. 1994). In Martino, the Third Circuit found the substantial events in a breach of contract claim occurred in Michigan because that is where the contract was executed and performed, and where the franchisee was located. Id. The court rejected the plaintiff's argument that he suffered the harm in Pennsylvania where the outstanding payment was due, because "[e]ven though the result was

Cottman's non-receipt of those items in Pennsylvania, the omissions bringing about this result actually occurred in Michigan . . . [and] we fail to see how these omissions could 'give rise' to the claims that Cottman presents."  Id.

Here there is a dispute of fact as to where the contract was executed.  Vidible asserts the "first meeting" between the parties occurred in New York, but none of the contract drafts were in fact executed.  (ECF 19).  Instead, the parties proceeded on an oral contract.  Plaintiff's documents support an inference the contract was negotiated and formalized in Skype communications that occurred while Plaintiff's principal, Mr. Batista, was in Pennsylvania. (ECF 20).  Plaintiff further avers the performance of the contracts occurred in Pennsylvania. (ECF 20).  Defendants point to the choice of law clause in the unexecuted draft agreement to contend venue is proper in New York because New York law governs this case, but this is not determinative of venue.  The choice of law is a different issue than venue.  The Court concludes that Defendants have not yet met their burden to prove that venue is improper and the Court must, therefore, respect Plaintiff's choice of forum.

**E.  Motion To Dismiss For Failure To State A Claim**

Having reviewed the allegations of the Amended Complaint in the light most favorable to Plaintiff in some detail as summarized above, the Court concludes that the Amended Complaint is sufficient under Fed .R. Civ. P. 8.  The breach of contract claim is stated clearly given that there is no dispute at the moment the parties had an oral contract and the Amended Complaint alleges Vidible failed to make payments owed under that contract.  The claims for tortious interference are also sufficient because the Complaint alleges specific conduct by the two individual defendants acting on behalf of Vidible to exclude Plaintiff from contractual relationships it had formed or was in the process of forming.

21

## VI. CONCLUSION

Plaintiff has not produced any evidence or sufficient allegations to show either IDG or Greycroft have sufficient contacts with Pennsylvania to exercise either general or specific personal jurisdiction over them. Since Plaintiff has not met its burden to make a prima facie showing of personal jurisdiction, its claims against IDG and Greycroft shall be dismissed under Fed. Rule. Civ. P. 12(b)(2).

Plaintiff has produced sufficient evidence that Vidible, Hyman, and Mahlman are subject to specific personal jurisdiction under both the breach of contract and tortious interference claims in that Plaintiff's allegations are sufficient.

An appropriate Order follows.

O:\CIVIL 14\14-1433 streamline v. vidible\14cv1433.082614.memo.docx