**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| STREAMLINE BUSINESS GROUP, LLC, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :    Civil Action No. 2:14-cv-01433 |
| | : |
| VIDIBLE, INC., MICHAEL HYMAN, | :    Hon. Michael M. Baylson |
| TIMOTHY MAHLMAN, and AOL INC., | : |
| | : |
| Defendants. | : |

**ORDER**

AND NOW, this _____ day of _____, 2015, upon consideration

of the Motion of Defendants Vidible, Inc. and AOL Inc. to Dismiss the Second Amended

Complaint in Part, and any response thereto, it is hereby ORDERED that said Motion is

GRANTED as follows:

1.      The Second Amended Complaint is hereby DISMISSED WITH PREJUDICE in its

entirety as to Defendant AOL Inc.

2.      Counts I (Breach of Contract), II (Unjust Enrichment), and III (Breach of Fiduciary

Duty) are hereby DISMISSED WITH PREJUDICE as to Defendant Vidible, Inc.


BY THE COURT:


_____
Hon. Michael M. Baylson, J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| STREAMLINE BUSINESS GROUP, LLC, : | |
| : | |
| Plaintiff, : | |
| v. : | Civil Action No. 2:14-cv-01433 |
| : | |
| VIDIBLE, INC., MICHAEL HYMAN, : | Hon. Michael M. Baylson |
| TIMOTHY MAHLMAN, and AOL INC., : | |
| : | |
| Defendants. : | |

**MOTION OF DEFENDANTS VIDIBLE, INC. AND AOL INC. TO DISMISS THE
SECOND AMENDED COMPLAINT IN PART**

For the reasons set forth in the accompanying memorandum of law, which is incorporated

herein by reference, Defendants Vidible, Inc. and AOL Inc. move under Fed. R. Civ. P. 12(b)(6)

to dismiss Plaintiff's Second Amended Complaint for failure to set forth a claim upon which

relief can be granted.

WHEREFORE, Defendants Vidible, Inc. and AOL Inc. respectfully request that this Court grant its Motion and dismiss this action with prejudice against AOL Inc. and dismiss those counts against Vidible, Inc. as set forth in the accompanying proposed order.

Respectfully submitted,

Dated: March 9, 2015

/s/ Gregory T. Sturges
Brian T. Feeney
Gregory T. Sturges
Greenberg Traurig, LLP
2700 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Tel 215.988.7820
Fax 215.717.5238
feeneyb@gtlaw.com
sturgesg@gtlaw.com

Ryan C. Berry (admitted *pro hac vice*)
Greenberg Traurig, LLP
1750 Tysons Boulevard, Suite 1200
McLean, VA 22102
Tel 703.749.1369
Fax 703.714.8388
berryr@gtlaw.com

**Attorneys for Defendants Vidible, Inc. and AOL Inc.**

Arthur W. Lefco
Gregory W. Fox
MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN
2000 Market Street
Philadelphia, PA 19103
Tel 215.575.2588
Fax 215.575.2827

**Attorneys for Defendant Vidible, Inc.**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| STREAMLINE BUSINESS GROUP, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. 2:14-cv-01433 |
| | : | |
| VIDIBLE, INC., MICHAEL HYMAN, | : | Hon. Michael M. Baylson |
| TIMOTHY MAHLMAN, and AOL INC., | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANTS VIDIBLE, INC. AND
AOL INC. TO DISMISS THE SECOND AMENDED COMPLAINT IN PART**

**I.    INTRODUCTION**

On February 11, 2014, eleven months after commencing this case, Plaintiff Streamline

Business Group, LLC ("Streamline") conjured a third set of allegations and legal theories by

filing a Second Amended Complaint (Dkt. No. 60) (the "Complaint" or "SAC"). The SAC was

not prompted by new information produced to Streamline in discovery. Rather, Streamline filed

the SAC to inflate settlement value artificially and to draw a new "deep pocket" defendant—

against which it makes no claim of wrongdoing—into this litigation.

Because Streamline has now taken a third bite at the apple while represented by a

nationwide law firm and local counsel, Defendants Vidible, Inc. ("Vidible") and AOL Inc.

("AOL") respectfully submit that this Court should dismiss the claims asserted against them with

prejudice for the reasons discussed herein.

Streamline sought leave to file the SAC just weeks after AOL announced that it had

purchased the shares of Vidible from Vidible's previous owners. Streamline attempts to exploit

AOL's acquisition of Vidible by inflating its damages claim from the $5,000,000 claimed in the

first amended complaint (Dkt. No. 12 ¶ 56) to the more than $22,000,000 it now claims. (SAC ¶

92). Streamline's strategy to increase its damages claim by more than 400 percent is predicated on the newly-contrived but defective legal theories that (1) "AOL has assumed Defendant Vidible's contractual and other legal obligations" merely by acquiring Vidible's shares (SAC ¶ 77), and (2) Streamline's performance under an alleged oral agreement with Vidible created a "joint venture" (SAC ¶ 79) that now underlies Streamline's breach of contract, breach of fiduciary duty, and unjust enrichment claims. Both prongs of Streamline's new strategy are fatally defective as a matter of law.

First, the SAC adds AOL as a defendant without any basis in fact or law. Streamline's own allegations establish that (a) AOL was not a party to the alleged oral agreement at the heart of the dispute between Vidible and Streamline, (b) AOL is not alleged to have played any part in the alleged acts of breach, nor is it alleged to have engaged in any of the alleged tortious activity, all of which occurred almost a year before the acquisition, and (c) Streamline commenced this litigation more than eight months before AOL purchased Vidible's shares. Streamline has not articulated any valid legal theory, nor pleaded any facts, to support its claims against AOL. Instead, Streamline attempts to pursue claims against AOL solely on the basis of a made-up *legal conclusion* that AOL's acquisition of Vidible's shares renders it liable for Vidible's contractual obligations as a matter of law. Streamline's claims against AOL contradict the fundamental rule that a company's shareholder or parent company is not liable for the company's obligations. This Court should therefore dismiss AOL from this action with prejudice.

Second, Streamline has strategically re-cast its alleged contractual relationship with Vidible as a purported "joint venture," and premises its claims for breach of contract (SAC ¶ 83), breach of fiduciary duty (SAC ¶ 96), and unjust enrichment (SAC ¶ 103) on this theory. The SAC, however, fails to allege facts necessary to support these claims, including facts establishing

that the parties intended and agreed to create a joint venture. Rather than allege facts demonstrating that the parties entered into a joint venture agreement, Streamline asserts another bogus *legal conclusion*: that a "joint venture" arose as a matter of law. (*See, e.g.*, SAC ¶ 96). Streamline's theory again contradicts well-settled law: a joint venture does not arise by operation of law; it is a creature of contract, and the parties must clearly manifest their intent to enter such an arrangement. Streamline and Vidible never did so, *and Streamline does not allege otherwise*.

In addition to its failure to allege facts establishing an agreement to form a joint venture, the SAC also fails to allege facts showing that Streamline and Vidible agreed to share in profits and losses and to exercise mutual control over a joint project, as joint venture partners must. Moreover, Streamline admits that the parties did not agree on a fundamental term of the alleged joint venture agreement. Thus, facts alleged in the SAC compel a ruling that Streamline's joint venture theory is invalid, and the three claims now predicated on the existence of the supposed joint venture—breach of contract, breach of fiduciary duty and unjust enrichment—must all be dismissed.

The SAC is designed with the improper purpose of increasing the cost of this litigation and is based on legal contentions unwarranted by existing law or the facts as alleged by Streamline. Dismissal with prejudice is appropriate.

## II.   <u>FACTUAL BACKGROUND</u>

Streamline continues to allege that it provided marketing services to Vidible. (*See, e.g.*, SAC ¶¶ 1–2). Streamline now claims, however, that the oral agreement it allegedly entered into with Vidible gave rise to an alleged "joint venture." (*See, e.g.*, SAC ¶¶ 19, 24–25, 26, 28). Streamline does not plead any facts demonstrating that the parties agreed and understood that they had formed a joint venture. Streamline also fails to plead that it and Vidible ever exercised joint control over a mutual enterprise or shared in the profits and losses resulting from such an

enterprise. In fact, no allegation is made that Vidible and Streamline created a separate enterprise that would act as the joint venture.

Instead, Streamline pleads affirmative facts that rule out the formation of a joint venture as a matter of law. It alleges, *inter alia*, that it and Vidible were separate companies (SAC ¶¶ 5–6), Vidible always exercised exclusive control over its products (SAC ¶ 29), Vidible and Streamline agreed on the split of *some* revenues, but not others, for a limited period of time (SAC ¶¶ 25–28), and that Vidible entered into separate contracts with the customers Streamline brought it, contracts to which Streamline was not a party (SAC ¶ 34). Streamline makes no allegation that it ever had the right to, or in fact, exercised any control over Vidible itself.

In December 2014, AOL acquired Vidible. (SAC ¶ 75). Streamline does not allege that AOL was a party to the alleged oral agreement between Streamline and Vidible, nor does Streamline allege that AOL was in any way involved in Vidible's alleged breaches or torts. Instead, the sole basis for AOL's alleged liability for Vidible's acts is a bald legal conclusion that "AOL has assumed Defendant Vidible's contractual and other legal obligations." (SAC ¶ 77).

## III.   ARGUMENT

### A.   Standard of Review

Dismissal under Rule 12(b)(6) is appropriate whenever a plaintiff fails to allege sufficient facts in support of a claim that would entitle him or her to relief, or where a matter can be disposed of as a matter of law based on facts in the complaint or documents attached to it. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 562-66 (2007). Under *Iqbal* and *Twombly*, the Supreme Court confirmed that a complaint must contain specific factual allegations showing that the plaintiff is entitled to the relief he or she seeks. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 562-66. The Court is not required to accept inferences that are not supported by the well-pleaded facts of the complaint. *Twombly*, 550 U.S.

at 562-66 (the plaintiff must plead sufficient "factual content" to support the inference that the defendant is liable); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) ("[The] District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions."). A "complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its [well-pled] facts." *Fowler*, 578 F.3d at 211. Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the 'pleader is entitled to relief.'" *Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009) (quoting *Iqbal* and Fed.R.Civ.P. 8(a) (2)); *Iqbal*, 556 U.S. at 678 ("[n]aked assertion[s] devoid of 'further factual enhancement' do not suffice).

Dismissal with prejudice is required where a plaintiff pleads facts affirmatively showing that it is not entitled to relief. *Jones v. Bock*, 549 U.S. 199, 215 (2007) ("Whether a particular ground for opposing a claim may be the basis for dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground, not on the nature of the ground."); *Schmidt v. Skolas*, 770 F.3d 241, 251 (3d Cir. 2014) (citing cases holding, *inter alia*, dismissal is "appropriate when 'the plaintiff effectively pleads herself out of court' by alleging facts that establish [a] defense"); *Gagliardi v. Clark*, No. CIV A 06-20, 2006 WL 2847409, at *4 (W.D. Pa. Sept. 28, 2006) ("[W]here the plaintiff 'chooses to plead particulars, and they show that he has no claim, then he is out of luck – he has pleaded himself out of court."); WRIGHT & MILLER, 5B FEDERAL PRACTICE & PROCEDURE § 1357, at n.59 (3d ed. 2014) (same).

### B. Streamline's Claims Against AOL Fail Because AOL Is Not Liable For Vidible's Alleged Pre-Acquisition Actions and Contracts.

Streamline states the unsupported legal conclusion that, by virtue of AOL's purchase of Vidible's shares from Vidible's former shareholders, AOL has "assumed Defendant Vidible's

contractual and other legal obligations, including Vidible's obligations to [Streamline]." (SAC ¶ 77). Each count in the SAC purports to create liability for AOL on the basis of the alleged legal conclusion that AOL is liable to the same extent Vidible is supposedly liable, simply "by way of its acquisition of Vidible." (*See* SAC ¶¶ 93, 100, 114, 122).

Streamline makes no factual allegations that show how AOL could plausibly be liable. Indeed, Streamline's allegations themselves demonstrate that all of the key alleged events giving rise to Streamline's claims occurred in late 2013 and early 2014, months before AOL's acquisition of Vidible's stock. (*See, e.g.*, SAC ¶¶ 50, 58, 63, 64, alleging that the acts of breach occurred in late 2013 and early 2014). AOL is not alleged to be a party to the supposed joint venture between Streamline and Vidible. Indeed, the SAC admits that AOL did not acquire Vidible until December 1, 2014 (SAC ¶ 75), and thus Streamline does not allege (nor could it) that AOL participated, in any way, in the acts that allegedly give rise to the claims against Vidible. Moreover, Streamline does not, and cannot, allege that Vidible no longer exists as a valid corporation following the acquisition of its stock by AOL. *See* Certification of Good Standing for Vidible, dated March 6, 2015, attached as Exhibit A.[1]

Streamline's claim that AOL is liable simply because it now owns Vidible's stock is irreconcilable with the fundamental rule that a company's shareholders are not liable for the company's obligations. *See, e.g.*, *Kaplan v. First Options of Chicago, Inc.*, 19 F.3d 1503, 1520–

---

[1] The Court may take judicial notice of public records in deciding a motion to dismiss under Rule 12(b)(6). *In re Plastic Cutlery Antitrust Litig.*, No. 96-CV-728, 1998 WL 314655, at *3–*4 (E.D. Pa. June 15, 1998) (taking judicial of documents from Delaware Secretary of State proving that two defendants were separate corporate entities) (citing *Redding v. Freeman Products, Inc.*, No. 94-398, 1995 WL 410922, at *2 (N.D. Ill. July 10, 1995); *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1197 (3d Cir. 1993)); *Nikolouzakis v. Exinda Corp.*, No. 11-1261, 2012 WL 3239853, at *5 (D. Del. Aug. 7, 2012) (taking judicial notice of a "public document certified by Delaware's Secretary of State"); *Redding*, 1995 WL 410922, at *2 (taking judicial notice of certificates of good standing showing that defendants were separate corporate entities).

21 (3d Cir. 1994) (holding that "a shareholder is not personally liable to perform corporate obligations"). The rule applies regardless of whether the company's shareholder is an individual or a corporation:

> The corporate form was created to allow shareholders to invest without incurring personal liability for the acts of the corporation. These principles are equally applicable when the shareholder is, in fact, another corporation, and hence, mere ownership of a subsidiary does not justify the imposition of liability on the parent.

*Pearson v. Component Tech. Corp.*, 547 F.3d 471, 484 (3d Cir. 2001) (citations omitted). Thus, a parent company is generally not liable for the obligations of its subsidiary. *Billy v. Consol. Mach. Tool Corp.*, 51 N.Y.S.2d 152, 163 (N.Y. 1980) (holding that the "liability [of a parent company for its subsidiary's actions] can never be predicated solely upon the fact of a parent corporation's ownership of a controlling interest in the shares of its subsidiary").

An exception to this rule arises where the allegations in the complaint justify piercing the corporate veil. *See Quandel Group v. Chamberlin Co.*, C.A. No. 98-5762, 1999 WL 386602, at *2 n.* (E.D. Pa. June 14, 1999) ("That one corporation is the parent or subsidiary of another does not subject it to liability for the contracts of the other absent a showing sufficient to pierce the corporate veil."). Streamline made no such allegations here, nor could it. It would be impossible to demonstrate that AOL dominated and controlled Vidible at the time Vidible allegedly breached its purported agreement with Streamline because AOL was a completely separate company that had no relationship with Vidible until late 2014, well after Streamline claims that Vidible had already breached the alleged oral agreement. To emphasize this point, the commencement of this lawsuit on March 10, 2014 (Dkt. No. 1) ***pre-dates*** AOL's acquisition of Vidible's shares by more than eight months, so AOL could not possibly have orchestrated any of the actions giving rise to suit. *Cf. Chicago Florsheim Shoe Store Co. v. Cluett, Peabody & Co.*, 826 F.2d 725, 728–29 (7th Cir. 1987) (holding that former parent company is not liable for

subsidiary's breach of contract, when the breach occurred *after* the parent had divested itself of the subsidiary).

Another possible theory of liability not articulated by Streamline is a parent company's so-called "direct liability" for the subsidiary's acts. *Pearson*, 247 F.3d at 486–87. This type liability is rare, arising only when "the parent has interfered with the subsidiary's operations in a way that surpasses the control exercised by a parent as an incident of ownership." *Id.* at 487. Direct liability may attach where a parent company overrides its subsidiary's normal decision-making process and directs it to take the action giving rise to the claim. As with any potential veil piercing claim, Streamline has alleged nothing of the sort here, nor could it. As stated above, Streamline claims that Vidible breached the alleged oral contract with Streamline in late 2013 or early 2014, almost a year before AOL acquired Vidible's shares, and it commenced this action eight months **before** AOL acquired Vidible. The SAC itself demonstrates that no direct action by AOL gave rise to this action.

Streamline has not articulated any valid legal theory, nor pleaded any facts, to support its claims against AOL. AOL's mere purchase of Vidible's shares does not render it liable for Vidible's alleged pre-acquisition obligations and actions. Accordingly, this Court should dismiss all claims as to AOL. *Feszczyszyn v. Gen. Motors Corp.*, 669 N.Y.S.2d 1010, 1012, 248 A.D.2d 939, 940 (4th Dep't 1998) (affirming denial of motion for leave to amend complain to add corporate parent as a defendant because plaintiff "has failed to show that [the parent company] exercises complete dominion and control over [the subsidiary's] daily operations").

### C. Streamline Has Not Pleaded Facts Establishing That the Parties Agreed to Form a Joint Venture.

The SAC's breach contract, breach of fiduciary duty and unjust enrichment claims all depend on Streamline's second new and defective legal theory: that the alleged relationship

between it and Vidible was not the oral services contract alleged in the original and first amended complaints after all, but rather a "joint venture." Streamline's newly-invented joint venture theory fails, however, because Streamline does not allege facts demonstrating each of the elements required to establish that a joint venture existed under the laws of Pennsylvania, New York, or any other applicable jurisdiction.

### (1)   Certain Elements Are Necessary to Plead a Joint Venture.

In order to plead a joint venture, a party must plead four essential elements: (1) a specific agreement manifesting the intent of the parties to be associated as joint venturers; (2) a contribution of property, financial resources, effort, skill, or knowledge on the part of each party; (3) a provision for the sharing of profits and losses; and (4) some degree of joint control and joint management by the parties over the enterprise.[2] *Zeising v. Kelly*, 152 F. Supp. 2d 335, 347 (S.D.N.Y. 2001) (interpreting New York law) (citing *Itel Containers v. Atlanttrafik Exp. Serv. Ltd.*, 909 F.2d 698, 701 (2d Cir. 1990); *Chromalloy American Corp. v. Universal Housing Sys. of America, Inc.*, 495 F. Supp. 544, 549 (S.D.N.Y. 1980), *aff'd*, 697 F.2d 289 (2d Cir. 1982)). The absence of any one of these elements is fatal to a claim that the parties established a joint venture. *Zeising*, 152 F. Supp. 2d. at 347–48 (citing *United States Airways Group, Inc. v. British*

---

[2] There is no conflict between New York and Pennsylvania law regarding the required elements a plaintiff must plead to establish a joint venture. *In re Joey's Steakhouse, LLC*, 474 B.R. 167, 190 (E.D. Pa. 2012) (citing *Snellbaker v. Hermann*, 315 Pa. Super. 520, 526, 462 A.2d 713, 716 (1983) on Pennsylvania's joint venture test). *See also Reis v. Barley, Snyder, Senft & Cohen LLC*, 667 F. Supp. 2d 471, 494 (E.D. Pa. 2009) (holding under Pennsylvania law that no joint venture could exist without mutual control of a joint enterprise). Both states agree that joint ventures arise "wholly from contract," the parties' intent is paramount, and the remaining factors (mutual contribution, joint control, sharing profits/losses) are essentially the same. *Id.* Thus, this Court need not undertake a choice-of-law analysis in deciding this issue. (Delaware law and California law are virtually the same as well. *Warren v. Goldinger Brothers, Inc.*, 414 A.2d 507, 509 (Del. 1980); *Orosco v. Sun–Diamond Corp.*, 51 Cal. App. 4th 1659, 1666, 60 Cal. Rptr. 2d 179, 184 (1997).) Streamline's complaint fails to establish a joint venture under New York, Pennsylvania, or any other state's law.

*Airways PLC*, 989 F.Supp. 482, 492–93 (S.D.N.Y.1997); *Precision Testing Labs. v. Kenyon Corp.*, 644 F. Supp. 1327, 1348 (S.D.N.Y. 1986)).

> **(2)      Streamline Has Not Alleged the Requisite Intent to Form a Joint Venture.**

Streamline's theory that a joint venture arose as a matter of law based on its "contribution" to Vidible (presumably referring to Streamline's alleged identification of certain business prospects for Vidible) is contrary to law. Rather, for a court to find that a joint venture existed, it must conclude that the parties specifically agreed to form a joint venture:

> [A] joint venture is a voluntary relationship, the origin of which is wholly *ex contractu*, i.e., it is not a status created by law. This manifestation of intent need not be explicit, but the parties must be clear that they intend to form a joint venture, which is a fiduciary relationship, and not a simple contract.

*Zeising*, 152 F. Supp. 2d. at 348 (quoting *Precision*, 644 F. Supp. at 1349 (internal citations omitted)). Accordingly, Streamline's legal argument that its purported "contribution to Vidible at such a critical stage gives rise to a joint venture" finds no support in the law. (SAC ¶ 96). No "joint venture" arises unless the parties manifested their mutual intent to enter a joint venture.

Streamline has made no allegation that the parties intended and agreed to create a joint venture. Even though the parties have already engaged in written discovery in this case—Vidible has produced thousands of pages of documents to Streamline—Streamline fails to cite a single specific document (for example, any of the draft agreements that were exchanged between Streamline and Vidible or an email) or even an oral conversation where representatives of the parties stated their agreement to enter a joint venture with one another. Streamline is well-aware that the drafts of the parties' proposed written agreement, the proposed terms of which were ultimately never agreed to by the parties, was a "Services Agreement," and did not contemplate the creation of a joint venture.

The whole of Streamline's claim is simply an after-the-fact characterization of the parties' purported services agreement, and is not grounded in the parties' intentions at the time they allegedly contracted. (*See, e.g.*, SAC ¶ 104, characterizing the parties' relationship as a supposed "joint venture" because Streamline provided a service to Vidible). Streamline appears to contend that any contractual relationship whereby one company provides services to another and is compensated with a share of revenue is transformed by law into a "joint venture." This theory is contrary to law because a joint venture is a creature of contract—it cannot arise by operation of law—and Streamline pleaded no facts establishing that the parties specifically agreed to form a joint venture. A party's bare legal conclusion—particularly an incorrect legal conclusion—may not be accepted by the Court in determining a motion to dismiss. Instead, the Court must be able to "infer each of the elements of a joint venture from the facts and conclusions alleged in [plaintiff's] complaint." *Barnett v. Poag & McEwen Lifestyle Centers-Deer Park Town Center*, No. 98-C-7783, 1999 WL 691850, at *6 (N.D. Ill. Aug. 26, 1999) (dismissing breach of fiduciary duty count on motion to dismiss for failure to allege a joint venture).  Here, Streamline's joint venture theory fails because the SAC pleads no facts showing that it and Vidible agreed to create a joint venture agreement.

### (3)     Streamline Has Not Alleged the Requisite Agreement to Share Profits and Losses.

Streamline also did not allege that the parties agreed to share profits and losses. The gist of the alleged oral agreement between the parties that Streamline described is as follows: Streamline would locate customers for Vidible and it would be compensated, during a limited term, to a percentage of the "revenue stream" generated by the customers it located that used Vidible's video player. (SAC ¶¶ 26–27). That alleged agreement clearly falls short of describing a joint venture. At most, it describes a limited services agreement, under which Streamline is

incentivized to provide marketing services that attract new customers to Vidible.[3] *See Scott v. Rosenthal*, 97 Civ. 2143, 2000 WL 1863542, at *3 (S.D.N.Y. Dec. 20, 2000) ("an individual 'who has no proprietary interest in a business except to share profits as compensation for services is not a partner or a joint venture.'") (quoting *Impastato v. De Girolamo*, 117 Misc. 2d 786, 459 N.Y.S.2d 512, 514–15 (N.Y. Sup. Ct. 1983), *aff'd*, 95 A.D.2d 845, 464 N.Y.S.2d 382 (2d Dep't 1983)). *See also Zeising v. Kelly*, 152 F. Supp. 2d at 349 (dismissing plaintiff's complaint and holding that a mere allegation that plaintiff is entitled to "receive compensation for his services [. . .] cannot be construed as providing for the sharing of profits and losses among the parties, even construed liberally in favor of Plaintiff," even though plaintiff had alleged he was to be compensated with an equity share in the defendant). These cases demonstrate that a revenue-sharing agreement such as the one alleged by Streamline does not create a joint venture.

Moreover, Streamline has not alleged that it would share in Vidible's losses. According to its allegations, Streamline was entitled to 50% of the gross revenue generated by the video player over five years. (SAC ¶ 27). Even if the Court were to construe Vidible's alleged agreement to pay Streamline a percentage of the *revenue* Vidible earned from customers brought to it by Streamline an agreement to share in *profit*, which it should not do, the "joint venture" claim would still fail because the SAC does not plead an agreement to share in any losses. *Fetter v. Schink*, 902 F. Supp. 2d 399, 404 (S.D.N.Y. 2003) (citing *Maalin Bakodesh Soc'y, Inc. v. Lasher*, 301 A.D.2d 634, 634, 754 N.Y.S.2d 331 (2d Dep't 2003) ("[I]t is well-settled that an assertion that there was an agreement to distribute the proceeds of an enterprise on a percentage

---

[3] However, as previously noted, Streamline abandoned its earlier theory of an oral services contract when it filed the SAC, converting all of its prior allegations into the breach of a supposed joint venture agreement.

basis does not suffice to establish the existence of a joint venture.")). Nothing in the Second Amended Complaint suggests anything other than Vidible's alleged agreement to pay Streamline a percentage of some revenues for a limited period of time: there are no facts pleaded showing that Streamline agreed to share in any losses, or that it would it would be liable for Vidible's debts. Because Streamline has not alleged that the parties would share in profits and losses, the "joint venture" theory fails.

**(4)     Streamline Has Not Alleged the Requisite Joint Control Over Vidible.**

Last, Streamline has failed to allege that it exercised any joint control over Vidible (or that the parties jointly controlled some joint enterprise). Even Streamline admits as much, stating that "Vidible was entrusted with the conduct of the enterprise." (SAC ¶ 108). Streamline also admits that the customers it allegedly brought to Vidible contracted with Vidible, not with Streamline or some other non-existent joint entity. (SAC ¶ 34, "DHI signed an agreement with Defendant Vidible for the video exchange."). Streamline also does not allege that it was given any control over Vidible.

Indeed, it pleads facts squarely at odds with its "joint venture" theory, complaining that, "[u]nbeknowst to Plaintiff SBG," Vidible's investors held "at least three board seats" and "exerted pressure" on Vidible to change the terms of its alleged agreement with Streamline. (SAC ¶¶ 52, 56). Thus, Streamline's allegations affirmatively show that Streamline had no control over Vidible, and they affirmatively refute the conclusion that Streamline and Vidible agreed to control Vidible or some unidentified third-party entity jointly. For this reason as well, Streamline has failed to plead facts establishing a "joint venture."

### D. Count I Purports to Sue For Breach of the Non-Existent Joint Venture Agreement and Must Therefore Be Dismissed.

The SAC now characterizes the parties' alleged oral agreement for services as a joint venture. (SAC ¶ 19–30, heading title "The Joint Venture"). Indeed, Streamline now contends that the alleged oral contract was not a mere marketing agreement whereby Streamline was paid (on an incentive basis) for its services, but that its services to Vidible represent its "contribution" to the supposed joint venture. (SAC ¶¶ 24–25, 82, claiming that Vidible contributed products and Streamline customers in the alleged venture relationship). Accordingly, Streamline's re-cast breach of contract claim (Count I) now rests entirely on existence of a joint venture. If Streamline cannot successfully plead facts demonstrating the existence of a joint venture, the breach of contract claim fails. As explained above, Streamline has completely failed in this regard. Streamline has pleaded no facts, nor pointed to one concrete statement from any party, demonstrating that the parties intended to form a joint venture. Nor has Streamline pleaded other necessary factual elements: that it shared in Vidible's profits and losses and that it had any control over the purported joint enterprise.

Even if Streamline had not completely failed to plead a joint venture, there was no "meeting of the minds" on a key term of the supposed joint venture anyway. Streamline admits that it and Vidible never agreed to an essential term of the alleged joint venture agreement that it attempts to sue on in Count I. The parties never agreed on how to split the revenue from the "video exchange" generated by customers that Streamline brought to Vidible (SAC ¶ 26) ("[T]he parties agreed to discuss that split [of the video exchange revenue] at a later date when circumstances better allowed for pricing and collection of that service."). Thus, not only has Streamline not sufficiently alleged the formation of a joint venture in the respects discussed above, but it also has not (and cannot) plead the essential terms of the purported oral agreement

with respect to the video exchange revenue. To establish an oral contract, the plaintiff must demonstrate that the terms of the oral contract were sufficiently definite to be specifically enforced. *York Excavating Co. v. Employers Ins. of Wausau*, 834 F. Supp. 733, 740 (M.D. Pa. 1993) (interpreting Pennsylvania law). An oral agreement that "leaves a material element to future negotiation [. . .] is no more than 'an agreement to agree,' not enforceable." *Ancorp Nat'l Servs., Inc. v. Port Authority of New York and New Jersey*, 377 N.Y.S.2d 505, 507, 50 A.D.2d 790, 791 (1st Dep't 1975).[4]

Even had Streamline managed to successfully plead the existence of a valid joint venture, the SAC contains another fatal flaw: Streamline admits the parties never reached agreement on money, an essential term of any deal. Specifically, in Paragraphs 26 and 83 of the SAC, Streamline admits the parties never reached agreement on the percentage split of video exchange revenue from those Vidible customers allegedly identified by Streamline. The fact that such an essential term was never agreed upon shows that the parties never had a "meeting of the minds," and did not intend to enter a binding agreement with respect to video exchange revenue specifically, and with respect to a joint venture generally. *Chung v. Choi*, C.A. No. 07-2187, 2008 WL 3852237, at *3 (E.D. Pa. Aug. 18, 2008) ("'[T]he more important the uncertainty, the stronger the indication is that the parties do not intend to be bound.'") (quoting Restatement (Second) of Contracts § 33 cmt. f). For all of the foregoing reasons, Vidible and AOL respectfully request that the Court to dismiss Streamline's breach of contract claim (Count I).

---

[4] As with other issues discussed herein, there is no conflict of law on this issue of whether an oral contract must sufficiently define the terms of the agreement in order to be enforceable. Accordingly, no choice of law analysis is necessary, and Streamline's oral contract claim for video exchange revenue fails on the face of its pleading under any state's contract law.

**E.      Count II Claims Unjust Enrichment Arising From the Same Non-Existent Joint Venture Agreement and Must Therefore Be Dismissed.**

As discussed, Streamline has now declined to sue on the alleged oral services contract described in the original and first amended complaints. It has instead converted all of its prior allegations into claims based upon a supposed joint venture. Nevertheless, Streamline continues to allege the fact that it and Vidible specifically agreed on how to share video player revenues (as district from video exchange revenues), for a limited term, to compensate Streamline for its marketing services. (*See, e.g.*, SAC ¶ 84).

Having pleaded those facts, Streamline cannot maintain a cause of action for unjust enrichment (Count II). Streamline cannot make a strategic decision to sue in quantum meruit for an astronomical amount while simultaneously alleging facts that the parties agreed upon compensation (and/or no agreed-upon compensation in the case of the video exchange revenues) for the services rendered. Where the parties, as here, are alleged to have agreed to a valid and enforceable contract governing a particular subject matter, recovery on a theory of unjust enrichment for events arising out of that subject matter is ordinarily precluded. *Clark– Fitzpatrick, Inc. v. Long Is. R.R. Co.*, 70 N.Y.2d 382, 388, 521 N.Y.S.2d 653, 516 N.E.2d 190 (1987); *Birchwood Lakes Cmty. Ass'n v. Comis*, 296 Pa. Super. 77, 87–88, 442 A.2d 304, 309 (1982). In *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, the New York Court of Appeals found that an unjust enrichment claim should be dismissed on the pleadings where it was alleged that the disputed fee paid to the defendant "arose from services governed by an engagement letter signed by [plaintiff]." 12 N.Y.3d 132, 142, 879 N.Y.S.2d 355, 361, 907 N.E.2d 268, 274. *See also Morgenweck v. Vision Capital Advisors, LLC*, No. 08–2969, 2010 WL 9478990, at *5 (S.D.N.Y. June 3, 2010) (dismissing quasi-contract claims because oral agreement covered the matter of plaintiff's compensation); *Zito v. Fischbein, Badillo, Wagner & Harding*, 35 A.D.3d

- 16 -

306, 831 N.Y.S.2d 25 (1st Dep't 2006) (holding that quantum meruit claim was precluded where "an enforceable oral contract exist[ed] that covered the matter of plaintiff's compensation").

Such is the case here. Streamline alleges that it and Vidible entered into an oral agreement that governed compensation Vidible would pay Streamline for one source of revenue generated by the customers it introduced to Vidible. (SAC ¶¶ 82–84). Accordingly, Streamline has no claim for unjust enrichment, and Count II should be dismissed.

### F. Count III Claims Breach of Fiduciary Duty Arising From the Same Non-Existent Joint Venture Agreement and Should Therefore Be Dismissed.

Streamline's breach of fiduciary duty claim is entirely dependent upon the purported joint venture. (SAC ¶ 106) ("Consequently, Vidible owes fiduciary duties to SBG in its capacity as a co-venturer."). Streamline makes no other allegation that would give rise to a fiduciary relationship, nor could it, given that the parties are alleged to have been engaged in arms-length commercial transactions. As such, the breach of fiduciary duty claim rests entirely upon a non-existent joint venture, and should be dismissed.

IV.     __CONCLUSION__

For all of the foregoing reasons, Defendants Vidible, Inc. and AOL Inc. respectfully request that this Court grant its Motion and dismiss this action with prejudice as set forth in the accompanying proposed order.

Respectfully submitted,

Dated: March 9, 2015

/s/ Gregory T. Sturges
Brian T. Feeney
Gregory T. Sturges
Greenberg Traurig, LLP
2700 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Tel 215.988.7820
Fax 215.717.5238
feeneyb@gtlaw.com
sturgesg@gtlaw.com

Ryan C. Berry (admitted *pro hac vice*)
Greenberg Traurig, LLP
1750 Tysons Boulevard, Suite 1200
McLean, VA 22102
Tel 703.749.1369
Fax 703.714.8388
berryr@gtlaw.com

***Attorneys for Defendants Vidible, Inc. and AOL Inc.***

Arthur W. Lefco
Gregory W. Fox
MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN
2000 Market Street
Philadelphia, PA 19103
Tel 215.575.2588
Fax 215.575.2827

***Attorneys for Defendant Vidible, Inc.***

- 18 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this this 9th day of March 2015, the foregoing Motion of Defendants Vidible, Inc. and AOL Inc. to Dismiss the Second Amended Complaint in Part and Memorandum in Support were filed electronically and served on all counsel of record via the Court's ECF System.


/s/ Gregory T. Sturges
GREGORY T. STURGES