IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| STREAMLINE BUSINESS SERVICES, LLC | CIVIL ACTION |
|---|---|
| v. | |
| VIDIBLE, INC., et al. | NO. 14-1433 |

**MEMORANDUM RE MOTION OF DEFENDANTS VIDIBLE, INC. AND AOL INC. TO DISMISS THE SECOND AMENDED COMPLAINT IN PART**

**Baylson, J.**                                                                                                **June 2, 2015**

Defendants Vidible, Inc. ("Vidible") and AOL Inc.[1] move under Fed. R. Civ. P. 12(b)(6) to dismiss in part the Second Amended Complaint of Plaintiff Streamline Business Group, LLC d/b/a "Streamline Business Services, LLC" ("Streamline") in this breach of contract diversity action for failure to state a claim (ECF 65). Defendants argue that AOL, which purchased Vidible after the institution of this litigation, is not liable for Vidible's pre-acquisition actions and should be dismissed from this case. Defendants also contend that Streamline's breach of contract, unjust enrichment, and breach of fiduciary duty claims against Vidible must be dismissed because Streamline has failed to adequately allege the existence of a joint venture between Vidible and Streamline. The Court will grant Defendants' motion as to AOL and deny the motion as to Streamline's other claims.

**I. Factual Allegations and Procedural History**

Vidible—a technology startup in the business of connecting buyers and sellers of video content—created a live exchange marketplace for video. See ECF 60, Pl.'s Second Am. Compl. ¶ 1. Streamline alleges that the successful launch of that exchange was in part due to its efforts.

---

[1] Defendants Michael Hyman and Timothy Mahlman did not join this motion to dismiss.

Id. ¶ 2. Streamline contends that it entered into an oral contract for a joint venture with Vidible whereby Streamline agreed to procure customer relationships for Vidible and its products, and Vidible agreed to pay Streamline a share of the revenues from each customer relationship fostered by Streamline. Id. ¶ 24. Streamline alleges it contributed customer relationships to the joint venture and Vidible contributed Vidible's products. Id. § 25.

The alleged oral contract deals with two different revenue streams. With regard to the video player revenue stream, Streamline alleges that the parties orally agreed to a 50/50 split of gross revenues generated by Streamline's customer relationships for a five-year term. Id. § 27. With regard to the video exchange, which was still being built and not yet operational, Streamline alleges that the parties agreed in principle to split the potential revenue stream for a five-year term subject to later discussion regarding the split when circumstances better allowed for pricing and collection of that service. Id. § 26.

Streamline alleges that the parties performed as agreed for six months, until Streamline's 50 percent share of gross revenue generated by the video player grew to $100,000 per month. Id. § 3. At that point, Streamline contends that Vidible, under pressure from its investors, tried to change the contract term from five years to two years, to change the video player revenue calculation, and to institute a $10,000 per customer monthly cap on fees. Id. Streamline refused to make these changes and contends that Vidible breached the agreement by stopping payments. Id. § 4.

On December 1, 2014, more than nine months after Streamline filed this lawsuit, AOL announced it had acquired Vidible for approximately $50 million. Id. § 75. Streamline alleges that as a result of this acquisition, AOL assumed Vidible's contractual and other legal obligations, including Vidible's obligations to Streamline. Id. § 77. Streamline contends that

AOL has stepped into the shoes of Vidible with respect to the customer relationships that Streamline delivered to Vidible. Id. Streamline alleges that its relationships, and the revenue stream from those relationships, are the primary bases upon which AOL valued Vidible for acquisition purposes. Id. § 78. Defendants dispute Streamline's contention that AOL assumed Vidible's contractual and other legal obligations and note that Vidible continues to exist as a corporate entity.

On March 10, 2014, Streamline filed suit against Vidible, two venture capital fund investors in Vidible, and two of Vidible's principals, alleging breach of contract, unjust enrichment, and tortious interference. On April 25, 2014, Streamline filed its First Amended Complaint (ECF 12). On May 2, 2014, Vidible's venture capital investors Greycroft Partners, L.P. ("Greycroft") and IDG Ventures II, L.P. ("IDG"), moved to dismiss for lack of personal jurisdiction and failure to state a claim (ECF 15). On June 10, 2014, Vidible and two of its principals, Timothy Mahlman and Michael Hyman, moved to dismiss for lack of personal jurisdiction, improper venue, and failure to state a claim (ECF 19).

On August 26, 2014, the Court issued a Memorandum (ECF 24) and Order (ECF 25) granting the motion to dismiss of Greycroft and IDG and denying the motion to dismiss of Vidible, Mahlman, and Hyman.

On September 26, 2014, Vidible, Mahlman, and Hyman filed an answer and asserted counterclaims against Streamline for breach of a nondisclosure agreement and tortious interference with contract (ECF 33). The tortious interference counterclaim was voluntarily withdrawn and dismissed on December 9, 2014 (ECF 46).

On February 11, 2014, Streamline filed its Second Amended Complaint (ECF 60), which is now at issue, adding AOL as a defendant and adding allegations that Streamline and Vidible

had a joint venture.

On March 9, 2015, Vidible and AOL moved to dismiss in part the Second Amended Complaint (ECF 65). On April 8, 2015, Streamline filed its response (ECF 87). On April 20, 2015, Vidible and AOL filed a reply (ECF 93), and Streamline filed a surreply on April 27, 2015 (ECF 96).

The Court held oral argument on May 12, 2015. Following argument, the Court permitted each side to submit a short letter to Chambers listing cases that supported each side's respective positions as to whether AOL should be dismissed from the case and whether Streamline had sufficiently alleged the existence of a joint venture with Vidible.

## II. Analysis

In considering a motion to dismiss under Rule 12(b)(6), "we accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011) (internal quotation marks and citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its fact.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).[2]

### A. AOL's Liability for Vidible's Agreement with Streamline

Defendants contend that AOL should be dismissed from this case because Streamline has failed to establish that AOL is liable for Vidible's pre-acquisition agreement with Streamline. The claims in this case arose in 2013 and early 2014, and Streamline filed suit on March 10, 2014. AOL acquired Vidible approximately nine months later. The purchase appears to have

---

[2] Diversity jurisdiction is proper under 28 U.S.C. § 1332. The parties dispute whether Pennsylvania or New York law applies.

been structured as a stock acquisition, and Vidible continues to exist as a corporate entity and AOL subsidiary.

The general rule is that a shareholder or a parent corporation is not personally liable for corporate or subsidiary obligations. See Kaplan v. First Options of Chicago, Inc., 19 F.3d 1503, 1520-21 (3d Cir. 1994) (noting that "generally a shareholder is not personally liable to perform corporate obligations"); see also Pearson v. Component Tech. Corp., 247 F.3d 471, 484 (3d Cir. 2001) (noting that this principle is "equally applicable when the shareholder is . . . another corporation, and hence, mere ownership of a subsidiary does not justify the imposition of liability on the parent.").

At the oral argument, Streamline's counsel did not cite any case applying Pennsylvania (or New York) law permitting an acquiring corporation to be liable for the acts or omissions of the acquired corporation prior to the acquisition. Streamline has also failed to cite a case supporting its theory that AOL could be liable under a continuing breach theory because of Streamline's alleged entitlement to a five-year revenue stream under the oral contract. Streamline has also failed to plead sufficient facts for the Court to hold AOL liable for Vidible's pre-acquisition conduct under an alter ego or veil-piercing theory. Accordingly, the Court will dismiss AOL as a party to this case.[3]

Nonetheless, as the Court stated on the record at the oral argument, the Court will allow limited but reasonable discovery into any relationship AOL or any of its managers had to the subject matter of this litigation. If the discovery is too broad, the Court may allocate costs to the requesting party.

---

[3] The dismissal of AOL as a party is without prejudice to Streamline later seeking to amend its complaint to add AOL as a party should it develop facts during discovery enabling it to state a plausible claim of liability against AOL.

## B. Existence of a Joint Venture

Defendants also allege the Streamline has failed to adequately plead the existence of a joint venture between Streamline and Vidible. Under Pennsylvania law, a joint venture is a creation of contract, and parties must intend its formation. McRoberts v. Phelps, 138 A.2d 439, 443-44 (Pa. 1958). The contract need not be express but may be implied from the acts and conduct of the parties. Id. at 443. Pennsylvania courts recognize certain essential factors to the creation of a joint venture:

    1. Contribution to the joint venture by each member, which can be services skills, knowledge materials or money;

    2. Sharing of profits among the parties;[4]

    3. A joint proprietary interest and right of mutual control over the subject matter of the enterprise; and

    4. Usually, a single business transaction rather than a general and continuous transaction.

Id. at 443-44; see also In re Joey's Steakhouse, LLC, 474 B.R. 167, 190 (Bankr. E.D. Pa. 2012); Wilkins v. Heebner, 480 A.2d 1141, 1145 (Pa. Super. Ct. 1984) ("Without evidence of a shared proprietary interest and right of control, there can be no joint venture.").

However, these factors should not be read too strictly when ascertaining whether a relationship constitutes a joint venture. "Joint venture is an amorphous legal doctrine." Beavers v. West Penn Power Co., 436 F.2d 869, 872 (3d Cir. 1971). "The existence or non-existence of a joint venture depends on the facts and circumstances of each particular case and no fixed and

---

[4] It is unclear under Pennsylvania law whether sharing of losses is required. Compare McRoberts, 138 A.2d at 443 (listing only sharing of profits) with Waldman v. Shoemaker, 80 A.2d 776, 778 (Pa. 1951) (noting the lack of an agreement to share losses as a factor in declining to find a joint venture); see also In re PCH Assocs., 949 F.2d 585, 599 (2d Cir. 1991) (noting that Pennsylvania courts have not clearly stated whether parties must share losses). New York law appears to require sharing of losses. See Zeising v. Kelly, 152 F. Supp. 2d 335, 347 (S.D.N.Y. 2001). Other than that inconsistency, there appears to be no conflict between Pennsylvania and New York law regarding joint ventures.

fast rule can be promulgated to apply generally to all situations." McRoberts, 138 A. 2d at 444; see also Waldman v. Shoemaker, 80 A.2d 776, 778 (Pa. 1951) ("While a joint venture is a legal relation of recent origin it has never yet been specifically or satisfactorily defined.").

McRoberts involved a dispute about royalties from gas drilling in which the existence of a joint venture was at issue. Examining the record on appeal from an equitable decree of the court of common pleas, the Pennsylvania Supreme Court concluded a joint venture existed because the acts and conduct of the parties established the intent to create a joint venture. Id. at 444. The parties claiming the existence of a joint venture had contributed money to the enterprise, there was an expressed and implied understanding that profits were to be shared among the parties, and, even though daily operation of the enterprise was in the hands of two individuals, that fact did not eliminate the proprietary interest the other parties had in the enterprise. Id. at 444-45.

In Waldman, the Pennsylvania Supreme Court confronted the issue of whether the parties had a contract or a joint venture to raise turkeys for sale. 80 A.2d at 777. Affirming the grant of summary judgment in favor of plaintiffs, the court concluded there was no joint venture because plaintiffs had no control over the management of the enterprise and defendants retained sole title to the turkeys and the proceeds of sale. Id. at 778. Instead, the court held that the parties had a contract under which defendants were to pay plaintiffs $18,000 after all the turkeys were sold, regardless of whether the turkey sales were profitable. Id.

In Beavers, the Third Circuit reversed the district court's ruling that, as a matter of law, two companies were engaged in a joint venture with regard to the maintenance of an electric transmission line. Beavers, 436 F.2d at 872 (reversing and remanding for a new trial because the district court erroneously charged the jury on a theory of joint venture). The case involved a

7

1933 agreement which gave a telephone company and an electric company the right to use each other's poles to string wires. Id. at 873. The agreement provided that ownership of jointly used poles remained in the original owner, as did the obligation to maintain them. Id. However, the telephone company was entitled to reimbursement for a share of maintenance expenses unless the maintenance arose from conditions for which it was responsible. Id. The Third Circuit held there was no joint venture because the facts did not show a joint proprietary interest in or right of mutual control over the utility poles. Id.

In Richardson v. Walsh Const. Co., 334 F.2d 334 (3d Cir. 1964), a personal injury action, defendant construction companies contended that because they had a joint venture of which plaintiff, a laborer, was an employee, plaintiff's exclusive remedy should have been under Pennsylvania Workmen's Compensation Act. 334 F.2d at 336. The Third Circuit held that no joint venture existed, however, because defendants failed to offer any probative evidence as to the nature of their relationship. Id. (reversing and remanding for a new trial because evidence offered to show plaintiff was involved in a joint venture lacked probative value, was conclusory, and was in part inadmissible); see also Wilkins, 480 A.2d at 1145 ("[T]here is not one iota of evidence that Wilkins and Heebner shared a joint proprietary interest in or right of control over the leasehold estate.").

In a New York case relied on by Defendants, the district court concluded, in granting a motion to dismiss under Fed. R. Civ. P. 12(b)(6), that a plaintiff failed to adequately allege the existence of a joint venture. Zeising v. Kelly, 152 F. Supp. 2d 335, 347 (S.D.N.Y. 2001). Plaintiff alleged that the parties entered into an agreement "to combine resources and efforts to create an effective business plan," which the court concluded showed intent to enter into a contractual relationship, not a joint venture. Id. at 348. Nor was there sufficient evidence "that

8

the parties have so joined their property, interests, skills, and risks" for the court to find an implied intent to enter into a joint venture. Id. The court also concluded that plaintiff alleged only that he was to receive compensation for services, not that he was to share profits and losses. Id. at 348-49.

However, in In re Joey's Steakhouse, the bankruptcy court granted the bankruptcy trustee's leave to amend a breach of joint venture fiduciary duties claim under Fed. R. Civ. P. 15, finding that the trustee had adequately pleaded the existence of a joint venture. 474 B.R. at 190. Although no joint venture agreement was attached or referenced and the complaint did not specify defendants' contribution to the enterprise or share of profits, the court noted it seemed clear that defendants had contributed real estate, the complaint stated that defendants had an "expectation" of profits, and the complaint alleged common interest and control over the enterprise. Id. at 190-91. The court concluded that "while these are not the most comprehensive allegations of a joint venture, they will suffice for purposes of a motion to dismiss." Id. at 191.

In this case, Defendants contend that Streamline has failed to plead the essential elements of a joint venture. But Streamline has pleaded sufficient facts to allege the existence of joint venture sufficient to survive a motion to dismiss.

First, Streamline has sufficiently alleged the intent to form a joint venture. Although Vidible contends Streamline cannot cite any specific agreement between the parties to create a joint venture, Streamline relies on the alleged oral contract between the parties, which is sufficient at this stage of the litigation for Streamline to plausibly claim an agreement with Vidible that may have constituted a joint venture. Cf. Richardson, 334 F.2d at 336 (finding no joint venture because defendants failed to offer any probative evidence as to the nature of their relationship).

9

Second, Streamline has alleged that both parties contributed to the alleged joint venture. Streamline contends it contributed customers, and Vidible contributed technology. See Joey's Steakhouse, 474 B.R. at 191 (noting that although the complaint did not specify defendants' contribution to the enterprise, the court could find from the complaint that defendants had contributed real estate to the alleged joint venture).

Third, Streamline has alleged that the parties agreed to share profits generated by the online video exchange and gross revenues from the video player generated by customers delivered by Streamline. Although Defendants contend that the parties agreed to at most a limited service agreement under which Streamline would receive of percentage of revenues, not profits, Streamline's allegations are sufficient at the motion to dismiss stage regarding the sharing of profits. See Joey's Steakhouse, 474 B.R. at 190-91 (finding that a complaint pleading an "expectation" of profits was sufficient to allege sharing of profits).

Fourth, Streamline has alleged joint control over the online video exchange. Streamline alleges that Vidible controlled the development of the video player, and Streamline controlled the customer relationships. Defendants argue that Streamline has failed to show it exercised any joint control over Vidible or that the parties jointly controlled a separate enterprise. But Streamline need not allege that it controlled Vidible or a separate enterprise. Streamline need only allege it had some joint control with Vidible over the subject of the joint venture—which need not be an independently established entity—and Streamline has advanced such allegations. See McRoberts, 138 A.2d at 444-45 (holding that proponents of a joint venture proved a proprietary interest in the enterprise even though daily operation of the enterprise was in the hands of only two individuals); see also Beavers, 436 F.2d at 873 (evaluating whether each party

to an alleged joint venture exercised control over utility poles, not whether one of them had control over the other or a separate entity).

Fifth, Streamline alleges that the joint venture relates to a single business transaction—revenues generated from the online video marketplace via the video exchange and play for a five-year term.

Defendants' interpretation of a joint venture would require too much precision in defining what remains an amorphous legal concept. A joint venture resembles a jellyfish—they each have changing forms, they can wander a great deal, they have an unsettled future, and a backbone is not necessary. Just as a whale could swallow a jellyfish whole, so can the joint venture be swallowed whole by a bigger, stronger, wealthier corporation. Because Streamline has adequately alleged the existence of a joint venture, Defendants' motion to dismiss Streamline's breach of contract and breach of fiduciary duty claims will be denied.

**C.      Unjust Enrichment Claim**

The Court will also deny Defendants' motion as to Streamline's unjust enrichment claim. Defendants contend Streamline cannot maintain an unjust enrichment action because Streamline has alleged breach of a valid and enforceable contract governing their agreement. But Streamline is permitted to plead breach of contract and unjust enrichment in the alternative. See J.A. & W.A. Hess, Inc. v. Hazle Twp., 350 A.2d 858, 861 (Pa. 1976). It is true that Streamline cannot recover on a claim for unjust enrichment if such claim is based on breach of an express contract. See Hershey Foods Corp. v. Ralph Chapek, Inc., 828 F.2d 989, 999 (3d Cir. 1987). Here, dismissal of the unjust enrichment claim is premature because Streamline must be permitted some discovery regarding the scope and nature of the agreement between the parties, which may impact the nature of its claims and remedies going forward.

### III. Conclusion

Because the Court concludes that Streamline has failed to plead sufficient facts to show AOL is liable for Vidible's pre-acquisition dealings with Streamline, the Court will dismiss AOL as a party to this case. As the above discussion shows, and as the Court indicated at oral argument, there is no appellate precedent for granting a motion to dismiss a complaint with sufficient factual allegations asserting the existence of a joint venture. The Court will deny Defendants' motion to dismiss with regard to Streamline's breach of contract, unjust enrichment, and breach of fiduciary duty claims because Streamline has adequately pleaded the existence of a joint venture and is entitled to plead in the alternative.

An appropriate Order follows.

O:\CIVIL 14\14-1433 streamline v. vidible\Memorandum.MTD.SAC.6.2.15.docx