IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STREAMLINE BUSINESS GROUP, LLC<br><br>v.<br><br>VIDIBLE, INC., et al. | CIVIL ACTION<br><br>NO. 14-1433 |

## MEMORANDUM RE DEFENDANTS' MOTION TO DISMISS THE THIRD AMENDED COMPLAINT IN PART

Baylson, J.                                                                          June 27, 2016

In this breach of contract diversity action, Defendants Vidible, Inc. ("Vidible"), Michael

Hyman ("Hyman"), and Timothy Mahlman ("Mahlman" and together with Hyman, the

"Individual Defendants") move under Federal Rule of Civil Procedure ("Rule") 12(b)(6) to

dismiss in part the Third Amended Complaint (Third Am. Compl.) of plaintiff Streamline

Business Group, LLC d/b/a Streamline Business Services, LLC ("Streamline").

### I. PROCEDURAL HISTORY

The factual history of this lawsuit has been well documented[1] and, because it writes

primarily for the benefit of the parties, the Court will be brief in its recitation of the pertinent

facts.

Streamline filed its Third Amended Complaint on February 19, 2016.  (ECF 213).  On

March 4, 2016, Individual Defendants and Vidible (collectively, the "Defendants"), filed the

instant Motion for Partial Dismissal of Streamline's Third Amended Complaint.  ("Defs.' Br.",

ECF 215).  Streamline filed their Response in Opposition on March 18, 2016.  ("Pl.'s Opp'n",

ECF 219).  On March 25, 2016, Defendants filed their Reply in Further Support of their Motion

---

[1]       Streamline Bus. Servs., LLC v. Vidible, Inc., No. 14-1433, 2015 WL 3477675, at *1-2 (E.D. Pa. June 2, 2015) (Baylson, J.).

for Partial Dismissal.  ("Defs.' Reply", ECF 220).  Subsequently, on March 29, 2016, Streamline

filed a Motion for Leave to File a Sur-Reply in Further Opposition to Defendants' Motion for

Partial Dismissal ("Pl.'s Sur-Reply", ECF 221), which was granted by Order of this Court (the

"May 16 Order", ECF 234) on May 16, 2016.  The May 16 Order further provided that

Defendants file a brief addressing the issues raised for the first time in Streamline's Sur-Reply.

(Id.).  Defendants filed their supplementary brief on May 23, 2016.  ("Defs.' Suppl.", ECF 237).

## II.  STANDARD OF REVIEW

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the

Court may look only to the facts alleged in the complaint.  Jordan v. Fox, Rothschild, O'Brien &

Frankel, 20 F.3d 1250, 1261 (3d Cir.1994).  The Court must accept as true all well-pleaded

allegations in the complaint and view them in the light most favorable to the plaintiff.

Angelastro v. Prudential–Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir.1985).

A valid complaint requires only "a short and plain statement of the claim showing that

the pleader is entitled to relief."  FED.R.CIV.P. 8(a)(2).  "To survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Iqbal clarified that the

Court's decision in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) "expounded the

pleading standard for 'all civil actions.'"  Iqbal, 556 U.S. at 684.

The Court in Iqbal explained that, although a court must accept as true all of the factual

allegations contained in a complaint, that requirement does not apply to legal conclusions;

therefore, pleadings must include factual allegations to support the legal claims asserted.  Id. at

678, 684.  "Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice."  Id. at 678 (citing Twombly, 550 U.S. at 555); see also

Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir.2008) ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." (citing Twombly, 550 U.S. at 556 n.3). Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). To evaluate whether a plaintiff has met this standard the Third Circuit has instructed:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir.2010) (citations, alteration, footnote, and internal quotation marks omitted). In doing so, the court must "also disregard 'naked assertions devoid of further factual enhancement.'" Id. at 131 (quoting Iqbal, 556 U.S. at 678).[2]

### III. DISCUSSION

The Court first addresses a preliminary matter. Defendants move to dismiss Counts IV and VII in Plaintiff's Third Amended Complaint, essentially rehashing arguments presented in their Memorandum in Opposition to Plaintiff's Motion to Amend Second Amended Complaint (ECF 206). The parties vigorously dispute whether this Court's order of February 18, 2016 (the "February 18 Order", ECF 211) forecloses Defendants' instant Motion. While the Court appreciates Streamline's argument, it will not carry the day. The February 18 Order was determined according to the liberal rules afforded to amendment, and in no way passed judgment on the legal sufficiency of those claims under the standard of scrutiny utilized in deciding a

---

[2]      Diversity jurisdiction is proper under 28 U.S.C. § 1332.

motion to dismiss.  As such, the Court will proceed to a determination of the merits of

Defendants' Motion for Partial Dismissal of Streamline's Third Amended Complaint.

## A.  Claim for Unjust Enrichment against Individual Defendants

Under either Pennsylvania or New York law,[3] to survive a motion to dismiss on a claim

for unjust enrichment a plaintiff must allege that (1) the plaintiff conferred a benefit on the

defendant; (2) the benefit was at the expense of the plaintiff; and (3) under the circumstances,

equity demands restitution to the plaintiff.  Farina v. Bastianich, 984 N.Y.S.2d 46, 49 (App. Div.

2002); see also Torchia ex rel. Torchia v. Torchia, 499 A.2d 581, 582-83 (Pa. Super. Ct. 1985).

*1.  Piercing the Corporate Veil*

Defendants' first and second arguments essentially challenge the propriety of asserting a

claim for unjust enrichment against a corporation's shareholders.  Defendants' position was

adopted by New York's Second Department in Levin v. Kitsis, 920 N.Y.S.2d 131, 134 (N.Y.

App. Div. 2011).  In Levin, the plaintiffs alleged that the defendant husband and wife

"improperly assigned, without consideration, a consolidated mortgage interest to L'Esperanza, a

corporation owned and controlled by their daughter, Anna Kitsis."  Id.  "At the same time," the

husband and wife "obtained title to the subject premises in lieu of foreclosure, thereby

improperly transferring to L'Esperanza a lien superior to the liens asserted by the plaintiffs."  Id.

The Second Department found that these allegations were sufficient to state a cause of action for

unjust enrichment against L'Esperanza.  Id.  However, the plaintiffs' allegations were inadequate

to plead a claim for unjust enrichment against the daughter "in her individual capacity" because

"the plaintiffs [did] not allege any basis for piercing the corporate veil and imposing personal

liability upon" her.  Id.  As such, the Second Department requires that the plaintiffs demonstrate

---

[3]     The parties disagree as to what state law applies, and the Court declines to make such determination at this time.

entitlement to the equitable remedy of veil-piercing in order to reach individual defendants on a quasi-contract claim.

Similarly, Streamline's unjust enrichment claim against Individual Defendants fails because a corporate officer or employee of a corporation cannot be held liable where their interactions with a plaintiff are on behalf of the company and not themselves individually. Lopinyukelis II, LLC v. Merchant Capital Funding, LLC, 969 N.Y.S.2d 804 (N.Y. Sup. Ct. 2013). Here, Streamline has failed to allege sufficient facts showing that Individual Defendants purposefully abused the corporate form in order to benefit, unjustly, from Streamline's efforts. Streamline's argument is, at bottom, a request that this Court find mere knowledge sufficient to ground claims for unjust enrichment against an individual for acts that were undertaken in an official capacity. The law does not support such a finding. Indeed, Smith v. Mikki More, LLC, 21 F. Supp. 3d 276 (S.D.N.Y. 2014), cited by Streamline, is instructive on this point. In Mikki More, marketers and designers brought claims for, *inter alia*, breach of contract and unjust enrichment against a corporate hair-care product manufacturer and its corporate shareholders, claiming that the manufacturer had hired the marketers and designers to create wholly original label designs, packaging, advertisements, and a website to promote and market Mikki More products, but failed to compensate them as promised. Id. at 278. One of the plaintiffs sought the aid of a friend, individual defendant Vincent Pacifico ("Mr. Pacifico"), and explained that

> [P]laintiffs had created the Label Materials, store displays,
> advertising and promotional campaigns, and the Website; that in
> exchange Braun had promised 20% of the net proceeds of the
> Mikki More venture; and that Braun had refused to compensate
> plaintiffs as promised. [Mr.] Pacifico told [the individual plaintiff]
> that he would investigate and attempt to settle the dispute.

Id. at 279. Rather than attempt to settle the dispute, however, Mr. Pacifico "struck a deal" with another of the individual defendants, creating Mikki More LLC to acquire all the rights to the

Mikki More products, with full knowledge that he "would be using unauthorized, copyrighted works created by plaintiffs, including the Label Materials and website, for labeling, advertising, and promotion of the Mikki More products." Id.

The Mikki More court refused to credit Mr. Pacifico's argument that he only benefitted from the plaintiffs' work as a shareholder of Mikki More LLC and therefore that, because the benefits to a shareholder cannot establish a basis for liability in quasi-contract, the claim for unjust enrichment against him must be dismissed. Id. at 284. In refusing to dismiss, the court emphasized the purposiveness of Mr. Pacifico's actions with respect to Mikki More LLC. Mr. Pacifico "created Mikki More LLC and purchased his stake in the Mikki More venture with full knowledge" that the plaintiffs had not been compensated, "*intending to take for himself* some of the unjust enrichment" the other individual "enjoyed as a result of plaintiffs' uncompensated work." Id. (emphasis added).

Here, the allegations in Streamline's Third Amended Complaint are more closely aligned to those at issue in Levin and Lopinyukelis II, LLC, rather than those contained in the complaint in Mikki More. In its Third Amended Complaint, Streamline alleges that Vidible was created to provide "an exchange marketplace where all distributors, publishers, and advertisers, large or small, could buy and sell videos from a large database, as well as select among a range of potential content, so as better and more cost-effectively to match advertising to a more potentially receptive audience." (Third Am. Compl. ¶ 17). Thus, unlike in Mikki More, where the LLC at issue was created for the sole purpose of realizing a benefit at the expense of the plaintiffs, here Streamline acknowledges that Vidible was created for a legitimate business purpose. Furthermore, Streamline alleges that it negotiated its alleged agreement with Vidible with Messrs. Hyman on Mahlman, who "negotiated *on behalf of Vidible*." (Third Am. Compl.

¶ 24) (emphasis added).  (<u>See also</u> Third Am. Compl. ¶ 33).  Finally, while in <u>Mikki More</u> the

court emphasized that "plaintiffs do not seek to recover from Pacifico *because* he is a

shareholder," <u>Mikki More, LLC</u>, 21 F. Supp. 3d at 284, here Streamline alleges that Messrs.

"Hyman and Mahlman, *as shareholders of Vidible*, received a substantial profit after selling their

shares in connection with AOL's acquisition of Vidible" (Third Am. Compl. ¶ 122) (emphasis

added).

      Because Streamline has failed to allege such facts that would warrant exercising the

equitable remedy of veil piercing, the Court grants Vidible's request to dismiss Streamline's

unjust enrichment claim against Individual Defendants.

*2.  Pennsylvania "Participation" Theory*

      In a Sur-Reply, Streamline advances the argument that Messrs. Hyman and Mahlman are

liable for unjust enrichment under a participation theory of liability, thereby obviating the need

for this Court to pierce the corporate veil.  (Pl.'s Sur-Reply at 3-4).  Participation liability is a

separate and distinct basis of liability from alter ego liability.  <u>See</u> <u>Wicks v. Milzoco Builders,</u>

<u>Inc.</u>, 470 A.2d 86 (Pa. 1983) (explaining difference).  To plead participation liability, Streamline

must allege (1) the existence of tortious conduct and (2) knowing participation in or personal

direction of the tortious conduct by Messrs. Hyman and Mahlman.  <u>In re Kitchin</u>, 445 B.R. 472,

479 (Bankr. E.D. Pa. 2010) (citing <u>USTAAD Sys., Inc. v. iCAP Int'l Corp.</u>, No. 09-1149, 2010

WL 2838593, at *5 (M.D. Pa. July 16, 2010)).

      This Court has stated that the participation theory of liability "applies only in *tort*, not

contract." <u>Accurso v. Infra-Red Servs., Inc.</u>, 23 F. Supp. 3d 494, 507 (E.D. Pa. 2014) (Pratter,

J.).  In addition, both the Third Circuit and Supreme Court of Pennsylvania have established that

the individual participation of the corporate officer in the tortious activity is necessary to

demonstrate individual liability.  Id. (citing Wicks v. Milzoco Builders, 470 A.2d 86, 90 (Pa. 1983), and Walsh v. Alarm Sec. Grp., Inc., 95 Fed. App'x 399, 402 (3d Cir. 2004)).  In support of its contention that the participation theory applies to unjust enrichment, a quasi-contract claim, Streamline cites USTAAD Sys., Inc. v. iCAP Int'l Corp., No. 09-1149, 2010 WL 2838593, at *4-5 (M.D. Pa. July 16, 2010), which held that the plaintiff's ("USTAAD") unjust enrichment theory—against an individual defendant corporate officer ("Mr. Aguado")—survived the pending motion to dismiss.  However, the factual allegations supporting USTAAD's claim for unjust enrichment are distinguishable from those alleged in Streamline's Third Amended Complaint.

In USTAAD, the plaintiff technology company entered into an exclusive agreement with Branch Electric ("Branch"), wherein Branch obtained a license to use USTAAD's software (termed "Rigel") and USTAAD agreed to provide maintenance, customer support, and enhancement services for Rigel.  Id. at *1.  USTAAD also entered into an agreement with Cap Computer Consultants ("CCC"), whose president and sole shareholder was Mr. Aguado, wherein CCC agreed to assume USTAAD's obligations to provide such services to CCC.  Id.  However, according to USTAAD, the fees due to USTAAD under its agreement with Branch were still payable to USTAAD and *not* to CCC.  Id.  However, USTAAD discovered that CCC was collecting fees from Branch in violation of USTAAD's agreement.  Id.

When it discovered this wrongdoing, USTAAD brought claims for intentional interference with contractual relations, civil conspiracy, and unjust enrichment against Mr. Aguado; additionally, USTAAD sought to pierce the corporate veil to hold Mr. Aguado personally liable for the acts of the corporation of which he was sole shareholder.  Id. at *1.  In

determining that USTAAD had sufficiently pleaded allegations such that its claim for unjust

enrichment against Mr. Aguado could proceed, the court stated the following:

> USTAAD alleges that Aguado controls and manages the
> operations of CCC and that CCC began to collect fees directly
> from Branch despite Aguado's knowledge of the exclusive
> agreement between Branch and USTAAD.  In addition, USTAAD
> claims that Aguado negotiated the 2004 software services
> agreement.  Construing these allegations in the light most
> favorable to USTAAD, the court can reasonably infer that Aguado
> actively participated in the alleged misconduct attributed to CCC.

Id. at *5.  These allegations constitute a claim for intentional interference with contractual

relations, which is a tort.  See Total Care Sys., Inc. v. Coons, 860 F. Supp. 236, 241 (E.D. Pa.

1994) ("The elements of intentional interference with existing contractual relations are (1) the

existence of a contractual relationship, (2) an intent on the part of the alleged interfering party to

harm the claimant by interfering with those contractual relations, (3) absence of privilege or

justification for the interference, and (4) damages.").  Accordingly, the USTAAD court did not

deviate from the established rule that participation liability is limited to claims sounding

primarily in tort and not contract.

Here, however, Streamline's unjust enrichment claim is based not on allegations

amounting to a tort (which supports the application of the participation theory), but on

allegations amounting to breach of contract, a claim which decidedly does *not* support

application of the participation theory.  Accurso, 23 F. Supp. 3d at 507 ("The nonapplicability of

the participation theory to the contract context has been made explicit by the Third Circuit Court

of Appeals . . . .") (citing Walsh, 95 Fed. App'x at 402).  Streamline alleges that Individual

Defendants, "as shareholders of Vidible, received a substantial profit after selling their shares in

connection with AOL's acquisition of Vidible despite having orchestrated the squeeze out of

their legitimate business partner (Streamline)."  (Third Am. Compl. ¶ 122).  These allegations are

insufficient to impose liability on Individual Defendants under a participation theory.  See 18 KT.TV, LLC v. Entest Biomedical, Inc., No. 11-244, 2011 WL 5374515, at *7 (M.D. Pa. Nov. 7, 2011) (refusing to apply participation theory to plaintiff's "conten[tion] that [the individual defendant's] omission of not paying plaintiff and causing the corporations he controls to breach their contracts [wa]s sufficient to impose individual liability under the participation theory"). Because Streamline's unjust enrichment theory against Individual Defendants is based on the theory that Messrs. Hyman and Mahlman caused Vidible to stop payment to Streamline in accordance with their alleged oral agreement, the Court will not extend the participation theory of liability to cover such claim, which sounds in the context of contract and not tort.

For the foregoing reasons,[4] the Court grants Defendants' motion and dismisses Streamline's unjust enrichment claim against Individual Defendants.

**B.  Washington Privacy Act Claim**

The State of Washington has provided a civil cause of action for damages for violating the right of privacy.  Washington's Privacy Act provides that it is unlawful for any individual to "intercept, or record any":

> Private communication transmitted by telephone, telegraph, radio, or other device between two or more individual between points within or without the state by any device electronic or otherwise designed to record and/or transmit said communication regardless how such device is powered or actuated, without first obtaining the consent of all the participants in the communication.

Rev. Code Wash. 9.73.030(1)(a).  The Privacy Act also contains a civil cause of action for damages:

---

[4]     Because Streamline's unjust enrichment claim against Individual Defendants fails for the foregoing reasons, the Court refuses to make a finding as to Vidible's final argument, which is that such claim must be dismissed due to Streamline seeking an improper remedy.  However, the Court does note that, at this stage in the litigation, it does not find the reasoning employed in Toll v. Tannenbaum, 982 F. Supp. 2d 541, 559 (E.D. Pa. 2013) particularly persuasive.  The Toll opinion was rendered at the summary judgment stage, not at the motion to dismiss stage, as is the case here.

> Any person who, directly or by means of a detective agency or any other agent, violations the provisions of this chapter shall be subject to legal action for damages, to be brought by any other person claiming that a violation of this statute has injured his or her business, his or her person, or his or her reputation.  A person so injured shall be entitled to actual damages, including mental pain and suffering endured by him or her on account of violation of the provisions of this chapter, or liquidated damages computed at the rate of one hundred dollars a day for each day of violation, not to exceed one thousand dollars, and a reasonable attorney's fee and other costs of litigation.

Rev. Code. Wash. 9.73.060.  Count VII of Streamline's Third Amended Complaint purports to state a claim for civil damages under RCW 9.73.060.

*1.  Streamline Had No Reasonable Expectation of Privacy in the Recorded Conversation*

Streamline's civil claim for damages under the Privacy Act must be dismissed because Streamline has failed to plead reasonable expectation of privacy in the recorded conversation and, as such, has failed to allege a violation of the Privacy Act.  The Supreme Court of Washington has enunciated a four-part test for analyzing purported violations of the Privacy Act.  There must have been: "(1) a private communication transmitted by a device, which was (2) intercepted by use of (3) a device to designed to record and/or transmit, (4) without the consent of all parties to the private communication."  State v.  Christensen, 102 P.2d 789, 791 (Wash. 2004) (en banc).  Defendants argue that Streamline has failed to establish the first prong of the test, namely that the conversation in question was private.  While the issue of whether a particular communication is private is a question of fact, the issue may be decided as a question of law where the facts are undisputed.  State v. Townsend, 57 P.3d 255, 259 (Wash. 2002).  Here, the relevant facts are not in dispute.

Streamline argues that based on its reasonable expectation and subjective intent, the conversation between Messrs. Hyman, Mahlman, and Elaameir (of Vidible), and A. James

Battista ("Mr. Batista", an officer and principal of Streamline) was private.  Defendants contend that Mr. Battista's subjective expectation of privacy was not reasonable because the phone call was made to discuss a business arrangement that had turned acrimonious.

The Supreme Court of Washington has adopted the dictionary definition of the word "'private': 'belonging to one's self . . . secret . . . intended only for the persons involved (a conversation) . . . holding a confidential relationship to something . . . a secret message: a private communication . . . secretly: not open or un public." Townsend, 57 P.3d at 259 (quoting Kadorian v. Bellingham Police Dep't, 829 P.2d 1061, 1067 (Wash. 1992)).  In addition, the "[r]elevant time for assessing the [speaker's] intent and reasonable expectations is at the time of the conversation." State v. Clark, 916 P.32d 384, 394 (Wash. 1996).  The Supreme Court of Washington analyses several factors in making a determination as to privacy, including the duration and subject matter of the conversation, the location of conversation and presence or potential presence of third parties, and the role of the nonconsenting party and his relationship to the consenting party. Id. at 392-93.

Neither party, nor this Court, has found a case discussing the privacy of a business conference call under Washington law.  Nonetheless, the Court determines that, under the circumstances, no party to the conference call on February 12, 2014 could have had a reasonable expectation of privacy.  In Denarii Systems, LLC v. Arab, No. 12-24239, 2013 WL 6162825 (S.D. Fla. Nov. 25, 2013), the court found that the plaintiff's secret recording of business meetings with the defendants violated the Florida Wiretap Act.[5]  In so finding, the district court

---

[5]     In Florida, as in Washington, courts consider various factors in making a determination as to the reasonableness of one's expectation of privacy, including: "(1) the location where the communication took place; (2) the manner in which the communication was made; (3) the nature of the communication; (4) the intent of the speaker asserting Chapter 934 protection at the time the communication was made; (5) the purpose of the communication; (6) the conduct of the speaker; (7) the number of people present; and (8) the contents of the communication." Denarii Sys., LLC v. Arab, No. 12-24239, 2013 WL 6162825, at *3 (S.D. Fla. Nov. 25, 2013)

distinguished its case from a Florida state court case finding no violation of the Florida Wiretap Act because, in Denarii, the court determined that there was "no reasonable 'expectation of privacy . . . in a conference call, specifically where the call wa[s] held to conduct the business of the company." Id. at *2 (alteration in original) (quoting Cohen Bros., LLC v. ME Corp., S.A., 872 So.2d 321, 325 (Fla.3d 2004) (per curiam)).  The Denarii court put great weight on the factual allegations calling attention to the defendants' subjective expectation of privacy during these meetings, namely that "the attendees spoke primarily about subject matter outside the scope of employment at Denarii and the parties spoke in a hushed manner, whispering so that other Denarii personnel would not hear the content of the private meeting which took place behind the closed door of defendant Arab's office." Id. (internal quotation marks omitted).  The factual circumstances in Denarii were thus different from those in Cohen, where the purpose of the call was to "conduct the business of the company."  Id. at *3 (quoting Cohen Bros., LLC, 872 So.2d at 325).  Because the defendants had pleaded in their counterclaim factual allegations that indicated their intention to keep the conversations secret, the mere fact that the conversations took place in an office did not negate the reasonable expectation of privacy that the defendants had during the conversations.  Id.

In this case, Streamline has failed to plead factual allegations indicating that it had any intention to keep the conference call private.  First, there were several parties to this call.  In this respect, Streamline's reliance on Frio v. Superior Court, 203 Cal. App. 3d 1480 (Ct. App. 1988, modified (Sept. 22, 1988), is misplaced.  In Frio, the California Court of Appeals, in determining that the business calls in question enjoyed a reasonable expectation of privacy, noted that "[a]ll the telephone communications were conducted on a one-to-one basis," and that "[t]he subject

(quoting Brevard Extraditions, Inc. v. Fleetmatics, USA, LLC, No. 8-12-2079, 2013 WL 5437117, at *4 (M.D. Fla. Sept. 27, 2013)).

matter also appeared to be a sensitive one on a personal level as among the parties." Id. at 1490. Furthermore, the speaker "conceded" that the other party to the telephone communications "had told [him] specifically that certain of their discussions regarding" their dealings "were to be considered confidential in the more narrow sense of entrusted intimacies." Id. at 1489-90.

Here, unlike in Frio, Streamline includes no allegation indicating that Mr. Battista relayed his preference as to confidentiality on the call. In addition, Streamline's proposed pleading concedes that the call had entirely to do with business matters, thus making this case more factually analogous to Cohen Bros., LLC than Denarii Systems, LLC. Finally, Streamline includes no factual allegation demonstrating that the setting of the phone call indicated to the other parties that the telephone communication was confidential. Neither Mr. Battista, nor Messrs. Hyman, Mahlman, or Elaameir, spoke in hushed tones, as did the parties to the telephone communication in Denarii. Denarii Sys., LLC, 2013 WL 6162825, at *2. For these reasons, the Court determines that Streamline did not have an objectively reasonable expectation of privacy in the February 12, 2014 phone call. See State v. Babcock, 168 Wash. App. 598, 605 (2012).

As Streamline has failed to sufficiently plead that it had an objectively reasonable expectation of privacy in the February 12, 2014 telephone communication, its claim for violation of Washington's Privacy Act will be dismissed.

2. *Streamline Failed to Allege an Injury Pursuant to Washington's Privacy Act*

Even had Streamline sufficiently pleaded an expectation of privacy in the recorded conversation, Streamline's Privacy Act claim must be dismissed for the additional reason that Streamline alleges only a violation of the Act, and not an injury to "business . . . person, or . . . reputation" resulting therefrom. Rev. Code Wash. 9.73.060. RCW 9.73.060 explicitly requires that suits brought thereunder are "to be brought by any other person claiming that a

14

violation of this statute has injured his or her business, his or her person, or his or her reputation." That a plaintiff bringing a claim under RCW 9.73.060 requires an injury *in addition to* a violation of the Act is reinforced by the fact that RCW 9.73.060 conditions the entitlement to damages, actual or liquidated, on the plaintiff being a "person so injured."[6] Id. Accordingly, Streamline must plead an injury to its business, person, or reputation, in addition to a violation of the Privacy Act, in order sufficiently state a civil cause of action for damages thereunder.

Though Streamline pleads a violation of the Privacy Act, it does not state an injury to its business, person, or reputation, and for that reason its claim under RCW 9.73.060 fails. In its Third Amended Complaint, Streamline alleges that on February 12, 2014, Messrs. Hyman, Mahlman and Elaameir, initiating a telephone call from Washington, to Mr. Battista in California, which they secretly recorded. (Third Am. Compl. ¶¶ 89-91, 183-86). These allegations track the requirements for a violation of the Privacy Act, not the requirements for a civil cause of action for damages under RCW 9.73.060. Because Streamline failed to allege injury resulting from the purported Privacy Act violation, its claim under RCW 9.73.060 will be dismissed.[7]

---

[6]     For these reasons, Streamline's reliance on Carlsen v. Freedom Debt Relief, LLC, No. 09-55, 2010 WL 1286616 (E.D. Wash. Mar. 26, 2010), is misplaced. In Carlsen, the district court determined that a violation of RCW 18.28.080 was a "*per se* violation of the Consumer Protection Act." Carlsen, 2010 WL 128661, at *8. Washington's Consumer Protection Act has different statutory requirements for a civil cause of action than its Privacy Act. The civil action under the Consumer Protection Act, RCW 19.86.093, provides that a plaintiff may establish that the act or practice is injurious to the public interest under RCW 19.86.020 because it "[v]iolates a statute that incorporates this chapter." RCW 19.86.093. Section 18.28.185 provides that a "violation of *this chapter* constitutes an unfair or deceptive act or practice in the conduct of trade or commerce under chapter 19.86 RCW." RCW 18.28.185 (emphasis added). Therefore, via RCW 18.28.195, a plaintiff can establish injury to public interest by showing a violation of RCW 18.28.080.
        The same cannot be said of RCW 9.73.060, which, as noted above, expressly differentiates between "violation" and "injury" to business, person, or reputation.
[7]     Because the Court finds that Streamline's Privacy Act claim fails for the foregoing reasons, it will not venture further and decide whether a corporation may properly bring a claim under Washington's Privacy Act.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motion for Partial Dismissal of Streamline's Third Amended Complaint, and dismisses Counts IV and VII of Streamline's Third Amended Complaint.

An appropriate Order follows.

O:\CIVIL 14\14-1433 streamline v. vidible\Memo re Motion to Dismiss TAC.docx